# UNITED STATES ET AL. *v.* CONTRACT STEEL CARRIERS, INC.

No. 102.  Argued February 29, 1956.—Decided March 12, 1956.

*Charles F. Barber* argued the cause for appellants. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Barnes, William J. Lamont* and *Robert W. Ginnane.*

*Robert N. Burchmore* argued the cause for appellee. With him on the brief was *John S. Burchmore.*

PER CURIAM.

The Interstate Commerce Commission brings an appeal from a three-judge district court, 49 U. S. C. § 305 (g), that reversed an order of the ICC, 62 M. C. C. 413, directing appellee Contract Steel Carriers to cease operations as a common carrier by motor vehicle.   128 F. Supp. 25.

Appellee holds licenses covering different areas surrounding Chicago, Houston, and St. Louis.   As these are substantially in the same form, a single illustration will suffice.   It covers contract carriage of

> "*Steel articles,* and such materials as are used or useful in highway construction projects, except cement, rock, sand, and gravel, over irregular routes, in connection with said carrier's presently authorized operations,
>
> "From points and places in the CHICAGO, ILL. COMMERCIAL ZONE, as defined by the Commission in 1 M. C. C. 673, to points and places in Arkansas, Iowa, Kansas, Missouri, Oklahoma, and Texas, and return with no transportation for compensation." No. MC 96505 SUB 6.

The facts are fully set out in the reports referred to above. In essence they show that appellee, by active solicitation from 1951 to 1954 in the areas mentioned, had secured 69 contracts to serve shippers. These had been filed with the Commission and there is no charge of any violation of the restrictions of the license or the requirements of individual contracts except that the appellee has held itself out by its actions to be a common carrier.[1]

The Commission found this holding-out from an advertisement, run without legal advice and since discontinued, offering its transportation service without mentioning whether it was contract or common carriage.

It was also charged that

> ". . . the great increase in the number of contracts held by it are attributable in large degree to aggressive sales activities and affirmative precontract traffic solicitation, which amounts to a public offer or holding out. In this connection, it is also asserted

---

[1] A common carrier is one "which holds itself out to the general public to engage in the transportation by motor vehicle . . . of passengers or property." A contract carrier is any "person which, under individual contracts or agreements, engages in" such transportation. 49 U. S. C. § 303 (a) (14), (15).

that defendant maintained an employee in Des Moines, Iowa, whose duties included the active solicitation of traffic. . . . There is evidence that business has been lost by interveners after a representative of defendant called upon receivers of steel in Iowa, leaving a copy of defendant's schedule of minimum rates and charges, and a copy of a blank contract to be executed by such shippers." 62 M. C. C. 413, 414–415.

It was concluded by the Commission:

"Although the facts here are meager in some respects, they reveal a pattern of extraordinary expansion in a period of approximately 8 months and an easy turnover of contracts thereafter. We believe that there is ample evidence to show that this expansion was brought about, to some extent at least, by indiscriminate solicitation and advertising, among other things." *Id.*, at 421.

In *Craig Contract Carrier Application*, 31 M. C. C. 705, 712, the ICC stated that the services of a contract carrier must be individual and specialized. A requirement of specialization is supported by respectable legislative history. See, *e. g.*, 79 Cong. Rec. 5651. In this case the ICC found that appellee had not sufficiently specialized its operation. However, we conclude that if specialization is to be read into 49 U. S. C. § 303 (a)(15) by the legislative history, it is satisfied here since appellee hauls only strictly limited types of steel products under individual and continuing contractual agreements with a comparatively small number of shippers throughout a large area.

We hold also that the fact that appellee has actively solicited business within the bounds of his license does

not support a finding that it was "holding itself out to the general public." A contract carrier is free to aggressively search for new business within the limits of his license.[2] Because the ICC's order is not supported by evidence in the record and is contrary to the definitions of contract and common carriers in § 303 (14) and (15), we affirm the District Court.

*Affirmed.*

Mr. Justice Frankfurter, whom Mr. Justice Harlan joins, dissenting.

The Motor Carrier Act, 49 Stat. 543, 544, 49 U. S. C. § 303 (a)(14), gives to the term "common carrier by motor vehicle" the classic meaning that "common carrier" had acquired and maintained during the course of centuries. In short, the test of what is a "common carrier" under this Act is what legal history has established as the test, and we do not find that the Interstate Commerce Commission has departed from this test. We cannot believe that if the evidence, as disclosed by the record, which need not be recited, had appeared in a common-law action against the respondent, a court would be justified in taking the case from the jury, and that if the jury had found against the respondent, its verdict would not be allowed to stand. The finding by the Interstate Commerce Commission that the respondent was a "common carrier," and therefore subject to the regulatory provisions of the Act, ought not to have less weight than a jury's verdict. Accordingly, other issues raised in the case are not reached, and we would reverse the judgment below.

---

[2] *"Provided, however,* That no terms, conditions, or limitations shall restrict the right of the carrier to substitute or add contracts within the scope of the permit, or to add to his or its equipment and facilities, within the scope of the permit, as the development of the business and the demands of the public may require." 49 U. S. C. § 309 (b).