TAR ASPHALT TRUCKING CO., Inc.,
Plaintiff,

v.

The UNITED STATES of America and
the Interstate Commerce Commission
of the United States of America, Defendants.

Civ. A. No. 644-61.

United States District Court
D. New Jersey.

Sept. 12, 1962.

John J. Corcoran, Jr., Jersey City, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by Vincent J. Commisa, Asst. U. S. Atty., and Robert S. Burk, Washington, D. C., for Interstate Commerce Comm.

Before SMITH, Circuit Judge, and WORTENDYKE and LANE, District Judges.

WORTENDYKE, District Judge.

This action is brought to set aside the report and order of the Interstate Commerce Commission (Commission) entered December 18, 1961 in Docket No. MC–93207 (Sub-No. 9), Tar Asphalt Trucking Company, Inc., Conversion Proceeding. This Court's jurisdiction is derived from 28 U.S.C. § 1336, and was exercised as a Three-Judge Court pursuant to sections 2284 and 2321–2325 of that Title.

Prior to the institution of the Proceedings by the Commission on January 24, 1958, Tar Asphalt Trucking Company, Inc., hereinafter referred to as Tar Asphalt, had been operating as a contract carrier by motor vehicle, under ICC permits dated respectively September 13, 1946 and March 30, 1948, for the transportation of coal tar, coal tar distillates and residue, asphalt and asphaltic admixtures in bulk, in tank trucks. The Conversion Proceedings were instituted by the Commission pursuant to the provisions of 49 U.S.C.A. § 312(c). That statutory subdivision directed the Commission to examine each outstanding permit issued to a motor carrier, and authorized the Commission to institute, within 180 days after August 22, 1957,

a proceeding upon its own initiative to revoke a permit and to issue in lieu thereof a certificate of public convenience and necessity if it found that the operations of the permit holder on that date did not conform with the definition of a contract carrier contained in 49 U.S.C.A. § 303(a) (15); but were those of a common carrier, and were otherwise lawful. That statutory definition of "contract carrier by motor vehicle" is "any person which engages in transportation by motor vehicle of * * * property in interstate * * * commerce, for compensation (other than transportation referred to in paragraph (14)[1] of this section and the exception therein), under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer."

Protests against the conversion of Tar Asphalt from a contract carrier to a common carrier were filed by five motor vehicle carriers, but at the hearing before the Commission's Examiner, on December 1, 1960, no testimony in behalf of the protestants was offered, and only one witness testified in behalf of Tar Asphalt.

The Commission's Examiner found that Tar Asphalt's operations on August 22, 1957 did not conform to the statutory definition of contract carrier, but were those of a common carrier by motor vehicle, although otherwise lawful. He accordingly recommended that an appropriate certificate issue to Tar Asphalt to operate as a common carrier by motor vehicle and that its permits to operate as a contract carrier be revoked. Tar Asphalt filed exceptions to the Examiner's recommended order. Upon due consideration, Division 1 of the Commission, by its order of June 13, 1961, directed that a certificate of public convenience and necessity issue to Tar Asphalt, authorizing its operation as a common carrier by motor vehicle for the transportation of the commodities, to and from the points, and within the territories authorized by its permits as a contract carrier, upon its compliance with the requirements of the Act. The period within which Tar Asphalt was directed by the Commission's order of June 13, 1961 to comply with the statutory prerequisites for the issuance of a certificate as a common carrier, was extended for a period of 60 days, by order of October 10, 1961. The Conversion Proceedings were reopened by order of November 8, 1961, of Division 1 of the Commission, whose further order of December 18, 1961[2] also adopted the Examiner's findings and those of its previous order, and again concluded, after reconsideration, that Tar Asphalt's operations did not conform to the definition of a contract carrier, but were those of a common carrier by motor vehicle, and were otherwise lawful.

Upon the oral argument before this Court, on May 9, 1962, it appeared that the record before the Commission had not been filed by Tar Asphalt, and the defendants urged that the Court dismiss the action for that reason; citing Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260. The plaintiff filed the record within the prescribed period following the completion of the oral argument, pursuant to leave granted by the Court.

Upon consideration of the testimony and exhibits given and admitted before the Commission's Examiner, we conclude that the Commission's order, here presented for review, was supported by substantial evidence. The evidence adequately sustains the inferences that (1)

1. Subsection (14) defines a common carrier by motor vehicle.

2. The complaint in the case before this Court was filed August 15, 1961; but, following the Commission's order after reconsideration, an amended complaint was filed herein on January 22, 1962. Defendants answered the amended complaint on February 9, 1962.

Tar Asphalt's operations do not conform with the definition of a contract carrier in section 303(a) (15) of the Act; (2) its operations are actually those of a common carrier; and (3) its operations are otherwise lawful. In order to conform with the statutory definition of a contract carrier, the carrier must operate "under continuing contract with one person or a limited number of persons" (1) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served, or (2) for the furnishing of transportation services designed to meet the distinct need of each individual customer.

That the Commission's interpretation of section 212(c) of the Act accords with the congressional intent in its enactment in 1957 will appear from a perusal of the legislative history set forth in 1957 U.S.Code Cong. & Admin.News, at page 1604. The Senate Committee on Interstate and Foreign Commerce, to whom the bill to revise the definition of contract carrier by motor vehicle was referred concluded that the then present law (49 U.S.C.A. § 303(a) (15)) was "inadequate in some respects and that corrective legislation * * * (was) necessary. * * * The decision of the Supreme Court in United States v. Contract Steel Carriers points out clearly a need for a change in the statute. Without it, proper and sound administration and regulation in the public interest cannot be achieved." In Contract Steel Carriers (1956, 350 U.S. 409, p. 411, 76 S.Ct. 461, p. 463, 100 L.Ed. 482) the Court concluded that the carrier was a contract carrier because it "hauls only strictly limited types of steel products under individual and continuing contractual agreements with a comparatively small number of shippers throughout a large area"; and that its active solicitation of business "within the bounds of his license does not support a finding that it was 'holding itself out to the general public.'" The opinion adds that a "contract carrier is free to aggressively search for new business within the limits of his license." The 1957 amendment of the Act contained in the new subsection (c) overruled Contract Steel Carriers by enunciating different criteria for determining whether a motor carrier is operating as a "contract," as distinguished from a "common" carrier.

A General Office Manager and Internal Accountant of Tar Asphalt testified before the Examiner that, since August 22, 1957, Tar Asphalt had at least 50 contracts pertaining to the transportation of asphalt or asphalt products of one kind or another. These contracts are normally for one year, but with a proviso that they shall continue unless cancelled by either party within a limited time after the expiration of the year. A list of 19 of these contracts, together with two invoices of Tar Asphalt for haulage in behalf of two of the parties with whom it had contracts, were admitted as late-filed exhibits after the conclusion of the hearing before the Examiner. Plaintiff does not assign vehicles for a continuing period of time for the exclusive use of each person with whom it contracts to furnish transportation. The carrier's equipment is allocated as orders come in, and then only for the period of the particular order or job. To this practice there were two possible exceptions, which were made for the convenience of the carrier, rather than for that of the shipper. An example of these exceptional instances is found in the endeavor to keep one tank for the transportation of oxidized asphalt in order to relieve the carrier of the necessity of cleaning the tank of residue of the product before using it for a different product. The exceptions referred to did not constitute a setting aside of vehicles for the exclusive service of a particular shipper (as distinguished from a particular product). The evidence further disclosed that although the plaintiff operated some equipment which was insulated and equipped with heating units and pumps, with extra long hoses to facilitate the unloading of liquid asphalt such equipment was required by the nature of the commodities transported by the plaintiff, as distin-

guished from the distinct need of a particular shipper. Since all of the plaintiff's customers dealt in products having generally similar characteristics, the same equipment was required for the transportation of the products of all of the customers of the plaintiff and of any others in the same production field whom it might secure. The evidence failed to disclose a separate distinct need of a particular customer for which plaintiff's equipment was peculiarly intended. Plaintiff's equipment was designed for a type of product produced by a class of customers and not for the special requirements of a particular product of a single customer. The record before the Commission failed to establish that any of plaintiff's customers had individual requirements relating to the transportation of its product which were peculiar to its business and for which the plaintiff provided a "tailormade" service to meet the individual customer's distinct need. That plaintiff's equipment was peculiarly essential for the type of product which it transported does not negate its status as a common, as distinguished from a contract, carrier, since its specialized service may be held out to all members of the public who have occasion to ship products for which such specialized equipment is appropriate. Therefore, the Commission properly concluded that Tar Asphalt did not assign motor vehicles for a continuing period of time to the exclusive use of each of its customers, nor did it furnish transportation services designed to meet "the distinct need of each individual customer" as required by the definition of "contract carrier by motor vehicle" contained in 49 U.S.C.A. § 303(a) (15).

Although plaintiff (at the time of the hearing before the Commission's Examiner) enjoyed only 19 continuing contracts with different customers, those contracts were for the transportation of a "narrow" group of related commodities consisting basically of asphalt and related petroleum products in bulk. However, plaintiff's witness testified that Tar Asphalt will enter into a transporta-

tion contract with any shipper requesting such service, provided agreeable terms for such service are arrived at. There was, therefore, substantial evidence justifying the Commission in concluding that the plaintiff will serve the ordinary needs for transportation of any shipper, of the commodities which it is equipped to handle, within its area of operations.

The plaintiff does not challenge the Commission's finding that Tar Asphalt's operations "are otherwise lawful," which is required by 49 U.S.C.A. § 312(c) as the third prerequisite for authorization to operate as a common carrier of the products which the plaintiff handles. Plaintiff, however, contends that the proviso in the Commission's order "that separately stated grants of operating authority shall not be joined or tacked directly one to another in order to provide a through transportation service * * " is erroneous. The purpose of the limitation contained in that proviso is obviously to maintain substantial parity with the operating authority contained in Tar Asphalt's contract carrier permits, and is in accord with the legislative intent implicit in section 312(c) of the Act which provides for "the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit" (for contract carriage). See Crescent Express Lines, Inc. v. United States, 1943, 320 U.S. 401, 64 S.Ct. 167, 88 L.Ed. 127. The contemporaneous construction of the Act by the Commission in this regard, as set forth in its decision in T. T. Brooks Trucking Co., Inc., Conversion Application 81 MCC 561 (1959) is entitled to great weight. United States v. American Trucking Associations, 1940, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. We accept it as a well reasoned authority.

We find to be without merit Tar Asphalt's further contention that the Commission's attempt to convert its status from that of contract carrier to that of common carrier, against the plaintiff's will, amounts to a taking of private prop-

erty for public use without just compensation and without due process of law in violation of the Fourteenth Amendment to the Federal Constitution. The Act does not authorize, and the Commission's order does not effect, a conversion of the plaintiff from a private carrier to a public utility. The statute does not *require* that Tar Asphalt operate as a common carrier, it merely affords an opportunity to plaintiff to continue to operate as a *common* carrier within the territory and for the purposes which it had formerly authorized by its previously issued permits. The statute merely embodies a new definition of a "contract carrier" and authorizes the Commission to determine whether one holding a permit as a contract carrier comes within that definition. The evidence before the Examiner amply sustained the Commission's conclusion that the plaintiff's operations did not bring it within the statutory definition. In this connection, plaintiff's argument that the burden of proving that it was not a contract carrier was cast upon the Commission, and required the presentation of proof by the Commission, indicates a misconception on the part of the plaintiff of the meaning and effect of section 312(c). The Commission is the administrative body to which Congress had delegated the exercise of its congressional authority in the field of interstate commerce. The Act imposes numerous inquisitorial, regulatory and supervisory duties upon the Commission in the discharge of its statutorily authorized powers and responsibilities. Assuming, without so deciding, that plaintiff has preserved its right to contend that the burden of proof rested upon the Commission and not upon it, the statutory power reposed in the Commission by 49 U.S.C.A. § 305(d) would have enabled the Commission to reach the same conclusion if plaintiff had not presented its witness and exhibits before the Examiner.

 This Court may not set aside an order of the Commission which is within the scope of the Commission's statutory authority and based upon ade-

quate findings supported by substantial evidence. United States v. Pierce Auto Freight Lines, 1946, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821. Where, as here, the applicable statutory language has been construed by the Commission in the light of its legislative history, such construction commands greater respect than that usually accorded administrative determinations of questions of law. United States v. American Trucking Associations, supra.

The order of the Commission is affirmed, and an appropriate order may be presented.