**Sylvia MOTTU, Appellant**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORP., Appellee.**

**No. B14–89–00722–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 6, 1990.

Rehearing Denied Feb. 7, 1991.

Clinard J. Hanby, Houston, for appellant.

Knox D. Nunnally, Morgan L. Copeland, Jr., Scott Statham, and Marie R. Yeates, Houston, for appellee.

Before PAUL PRESSLER, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a take-nothing judgment in a products liability action. In four points of error, appellant complains that the trial court erred in excluding evidence pertaining to truck safety features. We affirm.

On July 17, 1982, appellant was injured when the car in which she was a passenger collided with the rear end of a flatbed truck, legally parked on the side of a road in Fort Bend County. The evidence showed that appellant, the other passengers in the car, and appellant's husband, who was driving, were all intoxicated at the

time of the accident. Appellant argued that the left rear corner of the flatbed penetrated the passenger compartment of the car and struck her in the head rendering her a quadriplegic. Appellee's experts contended that appellant could have sustained her injuries by striking the windshield or the header. Navistar International (formerly International Harvester) manufactured the cab/chassis component of the truck, which consists of the motor, frame, cab, and running gear. The flatbed was attached to the truck by Knapheide Manufacturing Company. At the time of the collision, the truck was not equipped with an underride guard to prevent cars from riding under the truck in the event of rear-end collisions. There was some dispute as to whether the truck was ever equipped with an underride guard. Appellant sued Navistar under theories of strict liability, negligence, and failure to warn of the dangers associated with lack of underride guards. A jury found appellant to be 100% negligent and the trial court rendered a take-nothing judgment.

■ In her first point of error, appellant argues that the trial court erred in disallowing admission of a federal regulation mandating underride protection on the rear of trucks.[1] Appellant attempted to introduce the regulation as evidence of the standard of care required of appellee in manufacturing the cab/chassis combination. Generally, "provisions of a regulatory measure are inadmissible absent a showing of

its application to the situation in question and a clear violation of the regulation." *Simms v. Southwest Texas Methodist Hospital*, 535 S.W.2d 192, 200 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). It was undisputed that the truck did not have an underride guard on the date of the accident. It was, then, incumbent upon appellant to show that the federal regulation was applicable to the case at bar.

The safety regulations of these subchapters of Title 49 are applicable to common carriers, contract carriers, and private carriers. 49 C.F.R. § 390.33 (1973). Further, the regulations provide that "every motor carrier, and its officers, agents, drivers, representatives, and employees directly concerned with the installation and maintenance of equipment and accessories" must comply with the safety requirements and specifications outlined therein. *Id.* § 393.1.

■ The Interstate Commerce Act provides definitions for the terms found in the regulations. "Motor carrier" means both common carrier by motor vehicle and contract carrier by motor vehicle. 49 U.S.C.A. § 303(a)(16) (1963), *repealed by* Pub.L. 95–473, § 4(b), Oct. 17, 1978, 92 Stat. 1466; Pub.L. 97–449, § 7(b), Jan. 12, 1983, 96 Stat. 2444 [hereinafter 49 U.S.C.A.]. A "common carrier by motor vehicle" means any person[2] which holds itself out to the general public to engage in transportation by motor vehicle in interstate or foreign commerce of passengers or property for

---

1. The regulation in question provides:

   Every motor vehicle, except truck-tractors, pole trailers, and vehicles engaged in driveaway-towaway operations, the date of manufacture of which is subsequent to December 31, 1952, which is so constructed that the body or the chassis assembly if without a body has a clearance at the rear end of more than 30 inches from the ground when empty, shall be provided with bumpers or devices serving similar purposes which shall be so constructed and located that: (a) The clearance between the effective bottom of the bumpers or devices and the ground shall not exceed 30 inches with the vehicle empty; (b) the maximum distance between the closest points between bumpers, or devices, if more than one is used, shall not exceed 24 inches; (c) the maximum transverse distance from the

   widest part of the motor vehicle at the rear to the bumper or device shall not exceed 18 inches; (d) the bumpers or devices shall be located not more than 24 inches forward of the extreme rear of the vehicle; and (e) the bumpers or devices shall be substantially constructed and firmly attached. Motor vehicles constructed and maintained so that the body, chassis, or other parts of the vehicle afford the rear end protection contemplated shall be deemed to be in compliance with this section. Federal Motor Carrier Safety Regulation, 49 C.F.R. § 393.86 (1973).

2. "Person" is defined as any individual, firm copartnership, corporation, company, association, or joint-stock association including any trustee, receiver, assignee, or personal representative thereof.
   49 U.S.C.A. § 303(a)(1).

compensation. *Id.* § 303(a)(14). The Interstate Commerce Act comprised a comprehensive legislation regulating common carriers that are "engaged in the business of interstate *transportation* of property on public highways for hire." *U.S. v. Aides, Inc.,* 211 F.Supp. 122, 124 (E.D.Pa.1962) (emphasis added). Similarly, a carrier that invites the general public is a "common carrier." *Demetrion v. Edwards,* 416 F.2d 958, 959 (7th Cir.1969).

■ A "contract carrier by motor vehicle" means any person engaging in transportation by motor vehicle of passengers or property for compensation under continuing contracts with one or a limited number of persons either for the furnishing of transportation services through the assignment of motor vehicles to the exclusive use of each person served or for the furnishing of transportation services designed to meet the need of an individual customer. 49 U.S.C.A. § 303(a)(15). Thus, contract carriers engage in the *transportation* of passengers or property under individual contracts or agreements. *U.S. v. Contract Steel Carriers, Inc.,* 350 U.S. 409, 411, 76 S.Ct. 461, 462, 100 L.Ed. 482 (1956).

The term "private carrier by motor vehicle" means any person which transports in commerce property of which such person is the owner, lessee, or bailee, when the transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise. 49 U.S.C.A. § 303(a)(17). In structuring the laws governing motor carrier transportation, the aim of Congress was to ensure a regulated monopoly of for hire carriage and, at the same time, preserve the right to transport private property by private transport. *Agricultural Transportation Association of Texas v. King,* 349 F.2d 873, 878 (5th Cir. 1965).

It is clear that the Interstate Commerce Act and its associated federal regulations were intended to govern *transportation* of passengers and property. We find no indication that the statute or the rules are applicable to *manufacturers* of the vehicles used for that transportation; therefore, section 393.86 is not applicable to appellee or to the matters at issue during the trial. Indeed, appellant's own expert conceded that the regulation was inapplicable to a cab/chassis manufacturer. Consequently, we hold that the trial court correctly excluded section 393.86 from evidence. TEX.R.CIV.EVID. 402. Point of error number one is overruled.

■ In her second point of error, appellant complains that the trial court erred in excluding correspondence between appellee and the National Highway Traffic Safety Administration (NHTSA). The NHTSA conducted a study several years before the truck was manufactured to determine if section 393.86 needed updating. Appellee sent a series of letters to the NHSTA regarding the effectiveness of the proposed amendments to the regulation. Appellant attempted to introduce the letters as admissions by a party opponent under TEX.R.CIV. EVID. 801(e)(2) to show that appellee had "sophisticated knowledge" of underride guards several years before the truck involved in the accident was sold. However, appellee did not dispute that it had knowledge of underride guards nor did it dispute the dangers associated with trucks lacking in rear-end protection. The letters, therefore, would have been cumulative of the evidence already received.

Reversible error cannot ordinarily be shown in connection with an evidentiary ruling "unless the whole case turns on the particular evidence admitted or excluded." *Turner v. Monsanto, Inc.,* 717 S.W.2d 378, 381 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Because the letters would have been cumulative as to the issue of appellee's knowledge of underride guards, we find no error in the trial court's refusal to admit them. *American Oil Co. v. Fisher,* 659 S.W.2d 80, 83 (Tex.App.—Houston [14th Dist.] 1983, no writ). Point of error number two is overruled.

■ In her third and fourth points of error, appellant argues that the trial court erred in excluding three videotapes of automobile crash tests depicting the effect of underride guards. Appellant offered these films to demonstrate visually to the jury what underride guards were and what they would do. Appellant, however, concedes that she was able to present much of the

same testimony verbally through her expert witness. Once again, the films were merely cumulative evidence and we find no error in the trial court's ruling. *Id.*

We note further that the films fail to meet the test for experiments utilized as evidence. Two of the tapes depicted tests conducted with cars manufactured in the late 1960's whereas appellant was a passenger in a 1977 Ford Thunderbird. Another film showed a Chevrolet Impala as the test vehicle which has a different body style than the Thunderbird. In many of the crash sequences, the truck was anchored, unlike the truck involved in appellant's accident. Finally, appellee objected that the dynamics in the crash films, including the angle of impact and the speed of the vehicles, were dissimilar to those present in appellant's accident. To render the films admissible, there must be a substantial similarity between the conditions existing at the time of the experiment and those existing at the time of the incident giving rise to the litigation. *Fort Worth & Denver Railway Co. v. Williams,* 375 S.W.2d 279, 281–82 (Tex.1964); *Garza v. Cole,* 753 S.W.2d 245, 247 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

The trial court has broad discretion in determining the admissibility of such evidence and an appellate court will not overturn the court's decision absent an abuse of discretion. *Keith v. Silver,* 476 S.W.2d 335, 338 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). We perceive no abuse of discretion in refusing to admit videotapes of dissimilar experiments that were largely repetitious of the testimony of appellant's expert witness. Nor do we find any error amounting to the denial of appellant's rights such that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Garza* at 248; Tex.R.App.P. 81(b)(1). We overrule appellant's third and fourth points of error.

Accordingly, we affirm the judgment of the trial court.