**J. B. MONTGOMERY, INC., Plaintiff,**
**v.**
**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. A. No. 7384.

United States District Court
D. Colorado.

July 6, 1962.

---

4. See "Emphysema—Our Most Neglected Disease?" Reader's Digest, September, 1961.

Charles W. Singer, Chicago, Ill., and Joseph W. Morrisey, Jr., of Holme, Roberts, More & Owen, Denver, Colo., for plaintiff.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Attorney, Department of Justice, Washington, D. C., and Lawrence M. Henry, U. S. Atty., Denver, Colo., for defendant United States of America.

Robert W. Ginnane, Gen. Counsel, Arthur J. Cerra, Assistant General Counsel, and Betty Jo Christian, Interstate Commerce Commission, Washington, D. C., for defendant, Interstate Commerce Commission.

Before BREITENSTEIN, Circuit Judge, and ARRAJ and CHILSON, District Judges.

CHILSON, District Judge.

This is an appeal from a decision of the Interstate Commerce Commission, herein referred to as the "Commission."

After the filing of the complaint herein, J. B. Montgomery, Inc., an Iowa corporation, succeeded to the interests of the original plaintiff, J. B. Montgomery, Inc., a Nebraska corporation, and the former has been substituted as plaintiff herein. Both will be referred to herein as "Montgomery."

The controversy centers around certain restrictions placed by the Commission in a certificate of public convenience and necessity issued to Montgomery in 1961.

The events leading to the dispute are as follows:

Montgomery was issued a permit under the "grandfather" provisions of the 1935 Motor Carriers Act, Section 209(a) [49 U.S.C.A. § 309(a)],[1] to operate as a "contract carrier" by motor vehicle. The permit authorized Montgomery to transport under individual contracts or agree-

---

1. The pertinent parts of Section 309(a) (1) are:

"Except as otherwise provided in this section and in section 310a (regarding temporary authority) of this title, no per- son shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway or within any reservation under the exclusive jurisdiction of the United States

ments with certain classes of shippers certain commodities from certain designated geographical areas to other geographical areas, without restriction as to the actual points of pickup and delivery within the areas specified.

Prior to 1957, a "contract carrier" was defined by Section 203(a) (15) [49 U.S.C.A. § 303(a) (15)] as follows:

"The term 'contract carrier by motor vehicle' means any person which, under individual contracts or agreements, engages in the transportation (other than transportation referred to in paragraph (14) * * * and the exception therein) by motor vehicle of passengers or property in interstate or foreign commerce for compensation."

In 1957, the foregoing section was amended to read:

"The term 'contract carrier by motor vehicle' means any person which engages in transportation by motor vehicle of passengers or property in interstate or foreign commerce, for compensation (other than transportation referred to in paragraph (14) * * * and the exception therein), under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer."

To protect the interests of those "contract carriers" who held existing permits but who did not fall within the amended definition of "contract carrier",

Congress, in the 1957 amendments, enacted Section 212(c) [49 U.S.C.A. § 312 (c)], which provides:

"The Commission shall examine each outstanding permit and may within one hundred and eighty days after August 22, 1957, institute a proceeding either upon its own initiative, or upon application of a permit holder actually in operation or upon complaint of an interested party, and after notice and hearing revoke a permit and issue in lieu thereof a certificate of public convenience and necessity, if it finds, first, that any person holding a permit whose operations on August 22, 1957, do not conform with the definition of a contract carrier in section 303(a) (15) of this title as in force on and after August 22, 1957; second, are those of a common carrier; and, third, are otherwise lawful. Such certificate so issued shall authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit."

To make certain that no carrier would escape Commission regulation with respect to its interstate operations, there was also included in the 1957 amendment Section 203(c) [49 U.S.C.A. § 303(c)] which provides:

" * * * no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the

unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business: Provided, That, subject to section 310 of this title, if any such carrier or a predecessor in interest was in bona fide operation as a contract carrier by motor vehicle on July 1, 1935, over the route or routes or within the terri-

tory for which application is made and has so operated since that time, * * * the Commission shall issue such permit, without further proceedings, if application for such permit was made to the Commission as provided in subsection (b) of this section and within one hundred and twenty days after October 1, 1935, * * *."

Commission authorizing such transportation, * * *."

In January, 1958, the Commission instituted a proceeding under Section 212 (c) to determine if Montgomery's permit should be revoked and a certificate of public convenience and necessity issued in lieu thereof. Montgomery filed a petition affirmatively seeking conversion of its permit to a certificate.

After hearings, the Commission concluded that Montgomery's operations were no longer those of a "contract carrier" but were those of a "common carrier", were otherwise lawful, ordered Montgomery's permit revoked and authorized the issuance to Montgomery of a certificate of public convenience and necessity.

The certificate authorized Montgomery to transport, as a "common carrier", the same commodities to and from the same geographical areas as set forth in the permit, but as to three of the authorities the certificate restricted the points of pickup and delivery "to shipments moving from, to, or between wholesale and retail" outlets or stores.[2] These restrictions did not appear in the permit.

The Commission determined the restrictions were necessary to prevent an enlargement of the scope of operations under the certificate as compared with past operations under the permit. Or to put it another way, the Commission determined the restrictions were necessary to assure "substantial parity" between future operations under the certificate and past operations under the permit.

By this action Montgomery questions the Commission's authority to impose these restrictions.

The applicable principles of law are:

(1) Administrative determinations must have a basis in law and must be within the granted authority, and it is a judicial function and not an administrative function to determine the limits of the statutory power. Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718.

(2) Orders of an administrative agency may not be set aside, modified or disturbed if they are within the scope of the Commission's statutory authority and are based upon adequate findings, which in turn are supported by substantial evidence. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S. Ct. 687, 90 L.Ed. 821; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

---

2. A comparison between the wording of the permit and the certificate as to one of the three questioned authorities will serve to illustrate the differences between the permit and the certificate.

AUTHORITY UNDER PERMIT:
"3. And under such contracts or agreements with persons (as defined in section 203(a) of the Interstate Commerce Act) who operate wholesale or retail establishments, the business of which is the sale of meat, fruit, and vegetable packinghouse products: Such commodities as are usually dealt in, or used by, meat, fruit, and vegetable packinghouses, between Denver, Colo., and Chicago and Blue Island, Ill., on the one hand, and, on the other, points and places in Kansas, Nebraska, and Iowa, those in Colorado on and east of U. S. Highway 87 and on and north of U. S. Highway 50, and those in Illinois north of a line extending from a point on the Missouri-Illinois State line directly west of Springfield, Ill., through Springfield, to the Illinois-Indiana State line."

AUTHORITY UNDER THE CERTIFICATE:
"Such commodities as are usually dealt in, or used by, meat, fruit, and vegetable packinghouses,
"Between Denver, Colo., and Chicago and Blue Island, Ill., on the one hand, and, on the other, points in Kansas, Nebraska, Iowa, that part of Colorado on and east of U. S. Highway 87 and on and north of U. S. Highway 50, and that part of Illinois north of a line beginning at the Illinois-Missouri State line from a point directly west of Springfield, Ill., and extending through Springfield to the Illinois-Indiana State line.
"RESTRICTION: The authority granted immediately above is restricted to shipments moving from, to, or between wholesale and retail outlets, the business of which is the sale of meat, fruits, and vegetable packinghouse products."

(3) There is a presumption that the Commission has properly performed its official duties, and this presumption supports its acts in the absence of clear evidence to the contrary. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Baltimore and Ohio R. R. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L. Ed. 1209.

Montgomery asserts the restrictions are beyond the scope of the Commission's statutory authority.

Montgomery contends that the last sentence of Section 212(c), which reads:

"Such certificate so issued shall authorize the transportation, as a common carrier, of the *same* commodities between the *same* points or within the *same* territory as *authorized in the permit*." (Emphasis added),

is mandatory and allows the Commission no discretion or power to impose territorial restrictions not contained in the permit; that the legislative history discloses no intent on the part of Congress to authorize such territorial restrictions, but on the contrary, the legislative history indicates it was the intent of Congress that there should be no restriction of any rights held under the permit.

The Commission asserts the following statutory authority:

(1) Section 208(a) of the Motor Carriers Act [49 U.S.C.A. § 308(a)] relating to issuance of both "grandfather" and new certificates provides that the Commission may specify "the service to be rendered and the routes over which * * * [or] the territory within which, the motor carrier is authorized to operate" and this is statutory authority for the imposition of the restrictions here in question.

(2) The "grandfather" provisions of the Motor Carrier Act, Section 206(a) (1) [49 U.S.C.A. § 306(a) (1)], authorize the Commission to assure "substantial parity" between future operations and prior bona fide operations; that Section 212(c) is in the nature of a "grandfather" provision, and therefore, the Commission has the same power to accomplish "substantial parity" under Section 212(c) as it has under Section 206(a) (1).

(3) There is nothing in Section 212 (c) or its legislative history expressing a congressional intent to limit the Commission's power to impose territorial restrictions in certificates issued to converted carriers and the Commission's authority is implicit in the Act.

(4) The imposition of territorial restrictions preserving "substantial parity" is responsive to the intent of Congress expressed in the National Transportation Policy's injunction that the Act be administered to the end of developing and preserving an adequate, efficient and economical transportation system.

In short, the Commission construes Section 212(c) to authorize the imposition of such limitations as the Commission determines will accomplish "substantial parity" between Montgomery's previous operations as a permit carrier and its future operations under the certificate.

We will discuss the Commission's contentions in order.

Section 208(a) [49 U.S.C.A. § 308(a)] reads in part as follows:

"Any certificate issued under section 306 (grandfather provisions) or 307 (new certificates) * * * shall specify the service to be rendered and the routes over which * * * the territory within which, the motor carrier is authorized to operate."

Under this provision and Section 206 (a) [49 U.S.C.A. § 306(a)] (grandfather provisions) the delineation of the area and specification of localities which may be served has been entrusted by the Congress to the Commission. United States v. Carolina Freight Carriers Corp., 315 U.S. 475 at 480, 62 S.Ct. 722 at 725, 86 L. Ed. 971.

But the statutory authority provided by Section 208(a) to delineate the area of service is specifically limited to certificates issued under section 306 or 307.

The certificate in question here was issued under Section 212(c), which contains no such statutory authority. In fact, Section 212(c) specifically states that the Commission *"shall* authorize the transportation \* \* \* of the *same* commodities between the *same* points or within the *same* territory *as authorized in the permit."* (Emphasis added). In view of this specific mandate of the Congress, we are unable to read into Section 212(c) the powers of delineation and specification of territory which are contained in Section 208(a).

Nor do the "grandfather" provisions of the Motor Carrier Act, Section 206(a) (1) [49 U.S.C.A. § 306(a) (1)], authorize the Commission to impose the restrictions here in question.

The Supreme Court has held that the Commission is empowered to impose territorial limitations on a certificate issued under the "grandfather" provisions to assure "substantial parity" between future operations and prior bona fide operations. Alton R. R. v. United States, 315 U.S. 475; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 480, 62 S.Ct. 722, 86 L.Ed. 971. However, the authority for this power is derived from express delegations of power by the Congress. Section 208 [49 U.S.C.A. § 308] provides:

> "Any certificate issued under section 306 (grandfather provisions) \* \* \* shall specify the service to be rendered \* \* \* the territory within which, the motor carrier is authorized to operate."

Section 306 referred to above, (Section 206(a) [49 U.S.C.A. § 306(a)]) (grandfather provisions), provides that the issuance of a certificate under the grandfather provisions is dependent upon the bona fides of previous operations to be determined by the Commission. It was these two provisions of the Act, (Section 206(a), 49 U.S.C.A. § 306(a) and Section 208(a), 49 U.S.C.A. § 308(a)), to which the Supreme Court pointed in United States v. Carolina Freight Carriers

Corp., 315 U.S. 475, 62 S.Ct., when the Court stated:

> "The precise delineation of the area or the specification of localities which may be served has been entrusted by Congress to the Commission."

Section 212(c) neither authorizes the Commission to specify territory nor determine bona fides of prior operations.

The last sentence of Section 212(c) expressly states that the certificate shall authorize transportation "of the *same* commodities between the *same* points \* \* \* *as authorized in the permit."* (Emphasis added). This is tantamount to saying that the Commission shall not impose territorial restrictions beyond those contained in the permit.

There is nothing in the legislative history cited by the Commission indicating a contrary congressional intent. On the other hand, there is some support in the legislative history for this construction. During the hearings upon the bill before a Subcommittee of the Senate Interstate and Foreign Commerce Committee, the following exchange took place between Mr. Barton, transportation counsel for the Committee, and Mr. Clarke, then chairman of the Interstate Commerce Commission:

> "Mr. Barton: \* \* \*
>
> "Mr. Clarke, do you think there is any constitutional difficulty in changing, as we say, as you propose, a contract carrier to a common-carrier status?
>
> "Mr. Clarke: No, I can see none. *It isn't taking away from them anything that they have;* it isn't disturbing any property rights of the contract carrier. *It is giving him greater opportunity.* He can still serve his contract shippers, but through the conversion provisions of the bill *he would also have the opportunity to serve the general public as well as the obligation."* (Emphasis added) (P. 35 Hearings—Surface Transportation—Scope of

Authority of Interstate Commerce Commission, 85th Cong. 1st Session).

The fact that Congress has expressed an intention that the Act be administered to the end of developing and preserving an adequate, efficient and economical transportation system, does not give to the Commission unlimited authority to proceed in any manner which the Commission believes will accomplish these objectives. The Commission, in accomplishing the objectives, must proceed within the limit of its statutory authority and we find no such authority to impose the restrictions in question.

The Commission points out that the conversion of the permit to a certificate eliminates the permit restrictions which confined Montgomery's service to those which it served under individual contracts or agreements, and under the certificate Montgomery is now at liberty to serve any members of the public dealing in the commodities authorized for transportation by the certificate. The Commission indicates, that in the absence of restrictions to assure "substantial parity", the scope of the operations of Montgomery and other converted carriers under certificates may be greatly expanded as contrasted with their past operations under permits, and that such enlarged operations will have an adverse effect upon the industry.

This enlargement in the scope of operations of converted carriers was recognized in the legislative history which we have previously quoted. Mr. Clarke, the chairman of the Interstate Commerce Commission, stated that the conversion from a permit to a certificate not only didn't take away anything from the carrier, but gave him a greater opportunity. "He can still serve his contract shippers, but through the conversion provisions of the bill he would also have the opportunity to serve the general public as well as the obligation." (Hearings supra). There is nothing in the Act or its legislative history indicating that Congress intended to restrict this enlargement of operations by the test of "substantial parity" or otherwise.

Any adverse effect upon the industry resulting from the lack of authority of the Commission to impose restrictions to accomplish "substantial parity" between past and future operations is a matter for consideration by the Congress and is not a justification for this court to write into the congressional legislation something which is neither evident from the language of the Act nor from the legislative history.

The Commission also complains of Montgomery's failure to produce any evidence to demonstrate that it had in the past ever performed any services which could not be continued under the territorial limitations imposed by the Commission. The Commission states:

"In the absence of such evidence, the Commission was justified in concluding that such territorial limitations would enable it to furnish substantially the same service as a common carrier as it is now authorized to provide as a contract carrier, thereby insuring substantial parity between the permit and certificate authority."

Having held that a certificate to be issued under Section 212(c) is not subject to the test of "substantial parity" and there being no other issue raised, such as abandonment or dormancy, to which evidence of previous operations would be material, Montgomery was under no compulsion to offer evidence concerning his previous operations.

We hold that the Commission was without statutory authority to impose the restrictions in question.

The order of the Commission is set aside and the matter is remanded for further action by the Commission in accordance with the views herein expressed.

This opinion sufficiently states the findings of fact and conclusions of law of the court. Further findings of fact and conclusions of law are not necessary.