**FISCHBACH TRUCKING COMPANY,**
Plaintiff,
and
Contract Carrier Conference of the American Trucking Association, Inc.,
Intervening Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants,
and
Regular Common Carrier Conference of the American Trucking Association, Inc., Intervening Defendant.

Civ. A. No. 37218.

United States District Court
N. D. Ohio, E. D.

Nov. 16, 1966.

240

Rice A. Hershey, Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, Clarence D. Todd, Todd, Dillon & Sullivan, Washington, D. C., for plaintiff.

Merle M. McCurdy, U. S. Atty., John H. D. Wigger, Richard A. Solomon, Dept. of Justice, Washington, D. C., Betty Jo Christian, Robert W. Ginnane, I.C.C., C. F. Taplin, Jr., Roland Rice, Douglas Wick, Cleveland, Ohio, John C. Bradley, Washington, D. C., Roland Rice, John C. Bradley, Washington, D. C., for defendant.

## MEMORANDUM OPINION

Before WEICK, Circuit Judge, and CONNELL and KALBFLEISCH, District Judges.

CONNELL, Chief Judge.

We are confronted with an appeal from a report and order of the defendant Interstate Commerce Commission (hereinafter referred to as Commission), the result of a proceeding which was instituted by the Commission on November 22, 1957 to determine whether the outstanding contract carrier permits issued by the Commission to the plaintiff Fischbach Trucking Company (hereinafter referred to as Fischbach) should be revoked and a common carrier certificate issued in lieu thereof. The Commission found that Fischbach's operations did not conform to the definition of "Contract Carrier by Motor Vehicle" contained in the 1957 Amendment to Section 203(a) (15) of the Interstate Commerce Act, Public Law 85–163, 71 Stat. 411, and further found that plaintiff's operations were those of a "common carrier by motor vehicle." Consequently, the Commission issued a common carrier certificate to the plaintiff which retained in its language the same basic restrictions on the type of service defendant could provide which were found in the plaintiff's prior contract carrier permits. The principal issue presented here is whether the Commission, under the Act as modified by the 1957 amendments, in issuing common carrier certificates in place of

previously held contract carrier permits, may attach conditions limiting the type of service authorized under the new authority to that authorized in the old. The specific questions raised by the complaint are whether the Commission acted lawfully in (1) limiting the transportation under the certificates to movements to or from the facilities of the manufacturers or processors of the commodities which may be transported; and (2) prohibiting the "tacking" or joining of the separate authorities set out in the newly issued certificates, directly or indirectly, for the purpose of establishing a through service.

Prior to 1957 Fischbach operated under a contract carrier permit which authorized the transportation of (1) such merchandise as is manufactured or dealt in by rubber products plants, and, in connection therewith, equipment, materials and supplies used in the conduct of such business; (2) such commodities as are manufactured, processed or dealt in by manufacturers of asbestos products; and (3) canned and preserved foodstuffs. Each of the above was subject to a "Keystone restriction," which limited Fischbach to transportation under contracts with persons who operated the particular type of business involved. Fischbach's rubber products authority was thereby limited to transportation under contracts with rubber manufacturing plants; its asbestos products authority was limited to transportation under contracts with plants that manufacture and sell asbestos products; and its canned and preserved foodstuffs authority was limited to transportation under contracts with food business houses. Because of its contract carrier status, Fischbach was further prohibited from "tacking" its separate operating authorities at a common point to perform a through service.

In 1957 the statutory definition of "contract carrier" was amended by Congress [1] so as to confine the term in the future to carriers who operate under contracts with a limited number of persons, and who either (a) assign motor vehicles for a continuing period of time to the exclusive use of each person served, or (b) furnish a transportation service designed to meet the distinct need of each person served. Being aware of the fact that some carriers then holding contract carrier permits did not conform to the new definition, Congress, at the same time, enacted Section 212(c) [2], providing for the revocation of the permits of such carriers and the issuance of common carrier certificates.

* * * Such certificate so issued shall authorize the transportation, as a common carrier, of the same commodities between the same points or

---

1. Section 203(a) (15).

    The term "contract carrier by motor vehicle" means any person which engages in transportation by motor vehicle of passengers or property in interstate or foreign commerce, for compensation (other than transportation referred to in paragraph (14) of this subsection and the exception therein), under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer.

2. Section 212(c), as amended.

    The Commission shall examine each outstanding permit and may within one hundred and eighty days after the date this subsection takes effect institute a proceeding either upon its own initiative, or upon application of a permit holder actually in operation or upon complaint of an interested party, and after notice and hearing revoke a permit and issue in lieu thereof a certificate of public convenience and necessity, if it finds, first, that any person holding a permit whose operations on the date this subsection takes effect do not conform with the definition of a contract carrier in section 203(a) (15) as in force on and after the date this subsection takes effect; second, are those of a common carrier; and, third, are otherwise lawful. Such certificate so issued shall authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit.

within the same territory as authorized in the permit.

Consequent to the examination authorized by that new section, the Commission concluded that Fischbach's contract carrier permit should be revoked and a common carrier certificate issued in its stead. The propriety of the conversion is not here challenged. The Commission further concluded, however, that the certificate should include the two restrictions which are here at issue—a restriction to continue, to some extent, the effect of the so-called "Keystone restrictions" contained in the contract carrier permit held by Fischbach prior to conversion; and a restriction against the "tacking" of separate operating authorities contained in the certificate.

A complaint attacking the Commission's imposition of the above cited restrictions was filed in this Court on September 18, 1961. After briefs had been filed, but before oral argument, another case involving the "Keystone" issue (J. B. Montgomery, Inc. v. United States, 206 F.Supp. 455 (D.Colo.1963)) was appealed to the Supreme Court of the United States, and further proceedings before this Court were stayed pending the outcome of that litigation.

The Supreme Court rendered its decision in Montgomery (376 U.S. 389, 84 S.Ct. 884, 11 L.Ed.2d 797) on March 23rd, 1964, writing an opinion from which both sides here have vigorously claimed support. The meaning and effect of that decision will be discussed in some detail *infra*. At this introductory point, suffice it to say that the Supreme Court, after ruling upon the legal questions presented, ordered the proceeding remanded to the Commission for consideration of certain factual issues raised by Montgomery. The same factual issues were also raised by Fischbach in the instant suit. Accordingly, on April 23, 1964, the Commission reopened both proceedings for reconsideration. Its decision on reconsideration (98 M.C.C. 262) was issued on March 5, 1965; and plaintiff's amended complaint was filed in this court proceeding on September 23,

1965. After extensive briefing by plaintiff, defendant and intervening defendants, we come finally to decision.

We state at the outset that all members of the Court are in agreement that the Commission may continue the "Keystone" restrictions when converting a contract carrier into a common carrier. The members of the Court are also in agreement with those authorities which hold that the Commission may prevent "tacking" by a carrier converted from a contract carrier to a common carrier. A quick perusal of the authorities compels this conclusion.

The Supreme Court, in United States v. J. B. Montgomery, Inc., 376 U.S. 389, 84 S.Ct. 884 (1964) inferentially preserves the right of the Commission to so limit the shipping activity of a converted carrier. The opinion concludes thus:

> On remand the Commission will be free to contest appellee's factual claims as to what service it performed under its contract carrier permit and to limit the common carrier certificate to such activity. (at p. 396, 84 S.Ct. at p. 888)

The restrictions are valid if they "* * * leave the converted contract carrier in as good a position as it previously enjoyed." (At p. 395, 84 S.Ct. at p. 888) As to the lost privileges which Montgomery claimed to have exercised under its contract carrier status, the Court held that "if it did enjoy them or any others that we have not enumerated, then it is entitled to have the same freedom on its common carrier certificate." (At p. 394, 84 S.Ct. at p. 887)

Thus, with regard to the Keystone restrictions, it is clear that the Commission has the right, under the *Montgomery* decision, to impose these Keystone restrictions when converting a common carrier. The Congressional intent underlying the 1957 amendment requires that the Commission impose no new restrictions after conversion; so long as the carrier is permitted to enjoy the same rights it had as a contract carrier, the Keystone restriction is lawful. The sole issue remaining in this case, therefore, is whether Fischbach's new common car-

rier certificate entitles it to the same privileges which it enjoyed under its contract carrier status.

The "tacking" issue is apparently resolved by Tar Asphalt Trucking Co. v. United States, 208 F.Supp. 611 (D.C. N.J.1962), where the identical restriction under attack here was upheld. The plaintiff there was a former contract carrier undergoing the same conversion to which Fischbach objects.

> Plaintiff, however, contends that the proviso in the Commission's order "that separately stated grants of operating authority shall not be joined or tacked directly one to another in order to provide a through transportation service * * * " is erroneous. The purpose of the limitation contained in that proviso is obviously to maintain substantial parity with the operating authority contained in Tar Asphalt's contract carrier permits, and is in accord with the legislative intent implicit in section 312(c) of the Act which provides for the "transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit" (for contract carriage). (At p. 614)

As the quoted section reveals, the court's decision was premised, in part, upon recognition of the Commission's inherent power to maintain "subtantial parity" between the carrier's rights and privileges under old and new certification. It should be noted that the "substantial parity" test found disfavor with the Supreme Court in *Montgomery* only in so far as it was used as a criterion for diminishing the rights of the converted carrier. The no-tacking restriction here imposed impinges upon no former privilege of the plaintiff because tacking was not permitted under its old contract carrier's permit. The court affirmed the *Tar Asphalt* case in a per curiam opinion (372 U.S. 596, 83 S.Ct. 948, 9 L.Ed.2d 976 (1963)), thereby agreeing with the three-judge panel from the New Jersey Court that the Commission could impose the no-tacking provisions.

By way of introduction to the Keystone issue, a quick explanation of the origin of the Keystone restriction might be helpful. This descriptive categorization was first devised to meet the problem faced by the Commission when called upon to frame a description of a type of transportation service to be performed which would neither prohibit the carrier from meeting the transportation requirements of the shippers nor permit it to invade other areas of transportation service for which no need had been shown. One of the difficulties was specifying the large number of commodities which the carrier might be called upon to transport. To fully meet the shipper's needs, a contract carrier might be called upon to transport dozens or even hundreds of commodities. Should any of these numerous possible commodities not be embraced in the description, the authority and the service available under it would be inadequate. On the other hand, failure to define the service accurately could result in conferring a grant far broader than that for which need had been shown. To meet this problem and to maintain the delicate balance between the needs of the specific shipper and the need of the public, so as to avoid wasteful transportation operations, the Committee devised the Keystone description. That description named the class of shippers which the evidence showed does require a transportation service and identified the broad range of commodities by reference to the commodities manufactured, processed, dealt in, etc. by that class of shippers. In this manner the Commission achieved a satisfactory description of a type of transportation service for a contract carrier and, under the contract carrier provisions of the Act, the Keystone description was upheld by the Supreme Court in Noble v. United States, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277 (1943).

While such a description of a type of transportation service adequately de-

lineates the operations of a contract carrier, it is not sufficient, standing alone, to define the authority of a common carrier. In the Keystone description the commodity authority is all-embracing and intentionally non-specific within its field, but proper restraint is maintained by the limitation of the service on behalf of a specific type of shipper with which the carrier has contracts. Removal of the limitation on the person for whom the service may be performed would permit the carrier to serve the general public instead of a limited class of shippers. However, absent some adaptation of the Keystone description, it would also permit a greatly expanded type of service because of the broad and loosely defined commodity designation. This is the justification for the revision, in the certificate authorizing common carriage, of the language describing the carrier's new privileges.

Our problem now is to determine whether the language in the new certificate embraces all the rights and privileges embodied in Fischbach's permit for common carriage. That permit reads, in exemplary part, thus:

5. With persons as defined in section 203(a) of the Interstate Commerce Act who operate plants, the primary purpose of which is the manufacture, sale, and distribution of rubber products for the transportation of the commodities indicated and in the manner specified below:

Such merchandise as is manufactured or dealt in by rubber products plants and, in connection therewith, equipment, materials, and supplies in the conduct of such business, between points in the Akron, Ohio commercial zone, as defined by the Commission, and Watertown, Mass. on the one hand, and, on the other, Chicago Heights, Ill., and points in the Chicago, Ill. commercial zone, as defined by the Commission.

\* \* \* \* \* \*

Restrictions: The transportation service specified immediately above must be performed under special and individual contracts or agreements with persons (as defined in section 203 (a) of the Interstate Commerce Act) who operate rubber manufacturing plants the business of which is the manufacturing and sale of rubber products.

The certificate reads thus:

5. (15) Such merchandise as is manufactured or dealt in by rubber products plants, when moving to or from plants, warehouses, and *other facilities* of rubber products manufacturers or processors, and wholesale or retail outlets for such products, from Lawrence, Mass., to Syracuse, Buffalo, and Niagara Falls, N. Y., Chicago and Chicago Heights, Ill., points in Ohio, and those in that part of Indiana on and north of a line beginning at the Ohio-Indiana State line and extending along U.S. Highway 36 to Indianapolis, Ind., and thence along U.S. Highway 52 to the Indiana-Illinois State line.

The plaintiff, under its old permit, was free to serve any place, business, location, installation, store, warehouse, factory or other facility within its authorized territory, provided such was done under a contract with one of the specified class of shippers, i. e., "persons who operate rubber manufacturing plants, the business of which is the manufacturing and sale of rubber products." As a converted common carrier, in the Supreme Court's opinion, it is entitled to perform services to the same points and locations (376 U.S., at 395, 84 S.Ct. 884). The test of the validity of the Commission's action is simply whether or not the affirmative of the above is true.

In Part IV of the discussion in the Commission's report, it observes the basis for Keystone restrictions is to limit the class of shippers with which the carrier may contract, further pointing out, "in effect the transportation is limited to serving the types of businesses specified" (98 MCC, at 267). On the basis of this, the Commission presumes:

While the bulk of the transportation required by such shippers involves movements from, to or between their

described establishments, understandably, there are many instances where the conduct of such business requires transportation from, to or between warehouses or other facilities of the establishments described. (98 MCC, at 268). (Emphasis supplied.)

Accordingly, the Commission concedes that modification of the restrictions placed in plaintiff's certificate in lieu of the Keystone restrictions is warranted, and that the addition of the words "other facilities" is necessary. By a footnote to the report, the Commission attempts to embody the words "other facilities" with the broadest meaning. Specifically, the Commission has added a proviso to the definition, requiring that the transportation service rendered be "functionally related" to the activities of the described establishment. Moreover, the term "other facilities" is stated to refer solely to "other facilities of the establishments or businesses specified herein (in plaintiff's certificate.")

The plaintiff argues that it could have, as a contract carrier, performed certain services for rubber manufacturers which would be precluded by the restrictive language of its new certificate. For instance, at p. 28 of its brief,[3] filed February 11, 1966, and at p. 11 of its reply brief, the plaintiff points out several hypothetical trips it may no longer undertake because they are not "functionally related" to the business of manufacturing rubber products nor do they involve "other facilities" of rubber manufacturers, e. g., transfer of merchandise from one public warehouse to another, from a supplier to a consumer, etc. This cuts to the heart of the problem: Were these trips lawful under its contract carrier permit, and are they now precluded by the new certificate? The Government answers by stating that the announced intention of the Commission was to fully comply with the Supreme Court's edict that the converted carrier must enjoy all prior rights. The Commission's

report states categorically, at footnote 6, that the term "other facilities"—

should be construed broadly to accomplish the intent of the restrictions that Montgomery and Fischbach should be able to furnish all the transportation services as common carriers that they were authorized to perform as contract carriers. Accordingly, the examples given in footnote 5, supra, [similar to the examples advanced by plaintiff, supra] would be included in the catch-all "other facilities," provided, however, that the transportation service rendered to or from such "other facilities" is functionally related to the activities of the described establishments. 98 M.C.C. 268.

The Government's position, as stated at p. 19 of its brief, is this: The statement in the opinion that all formerly permissible trips are within the ambit of the new certificate is binding upon the Commission. Fischbach, therefore, need not worry of any future trouble; to justify any services proposed under its new certificate, it need only show that the trip is one which was lawful under its old permit.

Assuming that such a declaration in its opinion and order does bind the Commission's interpretation of the certificate, this does not whitewash the problem. However well-meant was the Commission's avowed intent to keep open all former avenues of business, the opinion apparently does require that transportation to these "other facilities" of its shipper must be "functionally related" to its main business—the manufacture of rubber products. The question then becomes: Could Fischbach, as a contract carrier, have transported goods not manufactured by its contractees to places not owned or operated by the shippers and which, therefore, would not be within the term "other facilities?" Further, could Fischbach ship goods not manufactured by its contractees if the transportation of these goods was not "functionally

3. The plaintiff, at pp. 26–28 of its brief, also cites two examples of formerly permissible trips which are now proscribed. Neither deserves much attention, if any, because they offer no problem.

related" to the manufacture or distribution of rubber products? Apparently, Yes. The former permit allowed ·the transportation of goods "manufactured or *dealt in*" by persons "who operate plants, the *primary* purpose of which is the manufacture, sale, and distribution" of rubber, asbestos or canned food products. Fischbach apparently would have been authorized to transport almost any product *dealt in* by its contractees so long as those persons' *primary* (not sole) business purpose concentrated on one of the classes of products specifically mentioned. Fischbach's fear that some of these formerly permissible services may be proscribed under the present certificate—despite the purported beneficence of the Commission's footnote 6—is well founded.

The Government has steadfastly maintained that the terms of the common carrier certificate are more generous to Fischbach than the Supreme Court required. Under the Supreme Court's opinion in *Montgomery,* the Commission could have required Fischbach to show the actual extent of its operations as a contract carrier; the Commission states that it intended to include all the operations which Fischbach could have maintained under its old certificate without requiring it to prove actual practices. However noble may have been the motives of the Commission, it appears that because of the use of the term "other facilities" and the restrictive definition of that term embodied in footnote 6 of its opinion, the certificate may have fallen short. of the Commission's announced intention.

We must, therefore, reconcile this apparent inconsistency between the Commission's language and its announced intention by holding that Fischbach is now permitted to transport any product *dealt in* by a person whose *primary* business purpose is the manufacture, processing or distribution of one of the classes of products enumerated in the certificate. With this minor modification, the Order and Report of the Commission are affirmed.