**SCOTT TRUCK LINE, INC., Plaintiff,**

v.

**UNITED STATES of America and The Interstate Commerce Commission, Defendants,**

and

**Illinois-California Express, Inc., et al., Intervening Defendants.**

**Civ. A. No. C–1881.**

United States District Court,
D. Colorado.

Dec. 21, 1971.

Isaacson, Rosenbaum, Goldberg & Miller, Professional Corporation by Harvey E. Deutsch, Denver, Colo., for plaintiff.

Hanford O'Hara, Office of the Gen. Counsel, I.C.C., Washington, D. C., for defendants.

Jones, Meiklejohn, Kehl & Lyons, by Leslie R. Kehl, Denver, Colo., for intervening defendants.

Before BREITENSTEIN, Circuit Judge, and ARRAJ and CHILSON, District Judges.

## MEMORANDUM OPINION AND ORDER

PER CURIAM.

Plaintiff in this action, Scott Truck Line, Inc. (Scott), is before the court seeking to have an order of the Interstate Commerce Commission (Commission) set aside in part. The United States and the Commission are the original defendants, and several motor carriers competing with Scott are intervening defendants. The sole questions for determination are whether the Commission has the authority to impose "keystone" restrictions on Scott's certificate of public convenience and necessity, and if so whether the evidence before the Commission justified the restrictions in question. Before turning to the facts of this case we think it advisable to discuss the history of keystone restrictions in the courts.

### I.

Keystone restrictions were developed by the Commission in an attempt to restrict and control the activities of contract carriers. The restrictions limit a contract carrier to dealings with specified classes or types of shippers, and were confirmed by the Supreme Court in Noble v. United States, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277 (1943). In 1957 Congress amended the Interstate Commerce Act so as to very narrowly define contract carriers. § 203(a) (15), 49 U.S.C. § 303(a) (15). The effect of this amendment was to require those shippers who were no longer contract carriers to receive certificates of public convenience and necessity as common carriers or to go out of business. To ex-

pedite the process Congress also passed § 212(c) of the act, 49 U.S.C. § 312(c), authorizing the Commission to revoke the contract carrier permit of any carrier who did not conform to the new definition of contract carriers, and whose operations are both "those of a common carrier" and "otherwise lawful.". Any carrier meeting these requirements was to be issued a certificate of public convenience and necessity. This certificate must "authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit." *Id.*

One of the contract carriers affected by these amendments was J. B. Montgomery, Inc., (Montgomery), and that company's attempts to receive a certificate provided the leading cases on the continuing viability of keystone restrictions. By order of September 16, 1960, Division 1 of the Commission found that all of the requirements of § 212(c) were met by Montgomery, and that a certificate should be issued. However, the Commission found that the keystone restrictions in Montgomery's permit should be carried over to the certificate. Montgomery's permit contained three restrictions, a typical one being the requirement that it contract only "with persons . . who operate wholesale or retail establishments, the business of which is the sale of meat, fruit, and vegetable pack-inghouse products." The same restriction was found in the other grants of authority, limiting contracts to persons operating "wholesale or retail hardware or automobile-accessory establishments" or "wholesale or retail department stores" handling "general merchandise." Consequently, the Commission restricted Montgomery's certificate so as to permit only "shipments moving from, to, or between wholesale and retail outlets" of the types of establishments referred to in the permit. J. B. Montgomery, Inc., Modification of Permit, 83 M.C.C. 457 (1960) (the terms of the permit and of the certificate are set out in Appendices A and C to this report, 83 M.C.C. at 464–

66). The Commission found that carrying over the restrictions would allow Montgomery "to furnish substantially the same service as a common carrier as it is now authorized to provide as a contract carrier thereby insuring substantial parity between the permit and certificate authority." *Id.* at 463.

Montgomery brought an action in this court to force the removal of the restrictions from its certificate, and the Commission order was vacated because "the Commission was without statutory authority to impose the restrictions in question." J. B. Montgomery Inc. v. United States, 206 F.Supp. 455, 461 (D. Colo.1962) (hereinafter *Montgomery I*). The court found that the "substantial parity" test could not be used to restrict a carrier's authority in these conversion proceedings, *id.* at 460–461, after finding that the restrictions in the certificate "did not appear in the permit." *Id.* at 458. In discussing the 1957 amendments the court quoted from the last sentence of § 212(c), that the certificate was to authorize transportation "of the same commodities between the same points or within the same territory as authorized in the permit." The court then noted that this language "is tantamount to saying that the Commission shall not impose territorial restrictions *beyond those contained in the permit.*" *Id.* at 460 (emphasis added).

On appeal the Supreme Court affirmed this decision and remanded the matter to the Commission for further proceedings. United States v. J. B. Montgomery, Inc., 376 U.S. 389, 84 S.Ct. 884, 11 L.Ed.2d 797, rehearing denied, 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964) (hereinafter *Montgomery II*). The Court agreed that "substantial parity" was not the correct test for the Commission to apply:

Nor do we believe that the Commission can impose the restrictions on a rule of "substantial parity" under its general powers. Since § 212(c) specifically commands that the Commission "shall" authorize *the same carriage as was included in the contract*

*carrier permit,* we are unable to place § 212(c) authority under the general powers of other unrelated sections. . . . *Id.* at 395, 84 S.Ct. at 888 (emphasis added).

However, the Court made it clear that the Commission could impose some restrictions on the certificate issued after § 212(c) conversion proceedings, finding only that the Commission could not restrict operations which were lawful under the contract carrier permit. The Court noted that Montgomery "carried on certain operations under its contract carrier permit. Congress intended that *these operations* be continued under the common carrier permit." *Id.* at 395–396, 84 S.Ct. at 888 (emphasis added).

On remand the Commission held combined hearings on the applications of Montgomery and Fischbach Trucking Co. (Fischbach). J. B. Montgomery, Inc., Conversion Application, 98 M.C.C. 262 (1965). The Commission concluded that all that was required by the Supreme Court's decision in *Montgomery II* was a modification of the restrictions, so as to authorize all operations which had been lawful under the permit. Accordingly, it changed the wording of the restrictions to permit carriage of goods "moving from, to, or between warehouses, wholesale and retail outlets, or other facilities" of the specified types of shippers. Fischbach and Montgomery both challenged these restrictions in federal court. This court found that the word changes did not satisfy the mandate of the Supreme Court in *Montgomery II,* and remanded the proceedings to the Commission for a factual determination of what Montgomery's activities had been prior to 1957. J. B. Montgomery, Inc. v. United States, 257 F.Supp. 188 (D.Colo.1966) (hereinafter *Montgomery III*). The court did not hold that no restrictions could be imposed on the conversion certificate. Rather, it pointed out that the

"addition of these words ["warehouses . . . or other facilities"] does not alter the substance of the restrictions or their purpose. The pres-

ent restrictions are territorial limitations *which were not contained in Montgomery's permit.* This is contrary to the specific mandate of the Congress that Montgomery is entitled to a certificate as a common carrier to transport the same commodities between the same points and within the same territory *as authorized by the permit." Id.* at 191 (emphasis added).

On remand the Commission concluded that the extensive scope of Montgomery's authorized contract carrier operations encompassed service to "a sufficiently broad segment of the shipping public to allow unrestricted operations." J. B. Montgomery, Inc., Conversion Application, 108 M.C.C. 638, 646 (1969). Consequently, the Commission finally issued an unrestricted certificate to Montgomery. *Id.*

The court handling Fischbach's complaint upheld the Commission, specifically finding "that the Commission may continue the 'Keystone' restrictions when converting a contract carrier into a common carrier." Fischbach Trucking Co. v. United States, 263 F.Supp. 239, 242 (N. D. Ohio 1966). That court came to the same conclusion as the court in *Montgomery III,* namely that the words "warehouses . . . or other facilities" did not authorize the full scope of operations which had been lawful under Fischbach's permit. However, rather than remanding the proceedings to the Commission as the Colorado court did, the *Fischbach* court modified the order being challenged to permit the company "to transport any product *dealt in* by a person whose *primary* business purpose is the manufacture, processing or distribution" of any one of "the classes of products enumerated in the certificate." *Id.* at 246 (emphasis in original). Since the prior scope of Fischbach's operations had been considerably less extensive than those of Montgomery, the ultimate results of *Fischbach* and of *Montgomery III* were substantively identical. Both permitted the same or greater operations under the conversion certificate as had been permitted under the contract car-

rier permit, but only on the basis of pre-1957 activities.

## II.

Against this background of litigation the facts of Scott's application and history are important. Prior to 1957 Scott operated as a contract carrier, restricted to operations by contract with persons operating "wholesale or resale establishments, the business of which is the manufacture, processing or sale of groceries or food." Scott Truck Line, Inc., Modification of Certificate, 108 M.C.C. 896, 907 (1969) (Appendix A). In August of 1957 Scott was the subject of a cease and desist order from the Commission, which was upheld in part by this court. Scott Truck Line, Inc. v. United States, 163 F.Supp. 118 (D.Colo.1958). Consequently, Scott at that time was on notice as to the limitations in its permit.

In September of 1957 Scott commenced two proceedings before the Commission, one a conversion proceeding under § 212 (c) and the other an application for a certificate of public convenience and necessity under § 207, 49 U.S.C. § 307. The applications were heard together, and the § 207 petition was denied because there had been no showing that public convenience and necessity required unrestricted services. The conversion proceedings were approved, and Scott was issued a certificate subject to restrictions analogous to those imposed on Montgomery. Scott Truck Line, Inc., Common Carrier Application, 82 M.C.C. 427 (1960). Scott was limited to shipments "moving from, to, or between warehouses, and wholesale, retail, or chain outlets of grocery and food business houses." Id. The Montgomery proceedings commenced at about this time, and Scott "made a conscious decision" not to challenge the restrictions in its certificate pending the outcome of that litigation.

In 1963 Scott was "admonished" by the Commission for publishing tariffs covering items it was not authorized to handle under its certificate. Various Commodities, Illinois to Denver, 322 I.C.C. 554 (1963). Again, Scott was put on notice of the scope of its certificate. Moreover, since this proceeding took place nearly a year before the Supreme Court handed down its decision in *Montgomery II*, there is some question about the willingness of Scott to "abide by the decision in that case" as it now claims it intended to do.

The Supreme Court's decision came down in 1964, and apparently Scott immediately began doing business as though it held an unrestricted permit. This was done in reliance on Scott's reading of *Montgomery II*, and again Scott's good faith may be open to question since it did not then petition for a modification of its certificate, and since the subsequent Commission action as to Fischbach and Montgomery made it obvious that the Commission did not agree with Scott's interpretation of *Montgomery II*.

In any event, Scott applied for a modification of its certificate in 1968, and the petition was denied on May 26, 1969. Scott exhausted its remedies with the Commission, and in 1969 commenced this action.

## III.

The intervening defendants argue that Scott is barred from maintaining this action by laches resulting from the eight year delay between issuance of the restricted permit and the filing of the petition for modification. Although the laches argument may have merit, neither the United States nor the Commission has objected to Scott's actions in bringing this suit, and for all parties a definite resolution of the legal issues would be the more desirable solution. In addition, the only prejudice to the intervening defendants results from the fact that Scott may have developed a clientele since 1960. However unfortunate Scott's decision to proceed as an unrestricted common carrier rather than to petition the Commission, that decision has not resulted in prejudice meriting dismissal of this action. Six years of shipping revenues have in theory been

lost to the intervenors, and if Scott loses this appeal the revenues will still be lost. If Scott wins there can be no objection to continued service to this clientele, and the revenues will not be returned. Consequently, we prefer to decide this matter on the merits.

■ As noted earlier, there are only two questions before us: could the Commission lawfully restrict Scott's certificate, and if so, are the restrictions in question supported by the evidence before the Commission? The answer to the first question clearly is "yes." The original decision in this court, *Montgomery I*, could be read as holding that no restrictions could be imposed on a conversion certificate. 206 F.Supp. at 461. However, that conclusion was challenged by other courts at the time, Zuzich Truck Line, Inc. v. United States, 224 F.Supp. 457 (D.Kan.1963); P. Saldutti & Son, Inc. v. United States, 210 F.Supp. 307 (D.N.J.1962), and we read the *Montgomery I* opinion as prohibiting only restrictions which were not in the permit. Moreover, a careful reading of the decision of the Supreme Court in *Montgomery II* establishes the propriety of some restrictions beyond question. The Court pointed out that Montgomery claimed to have been authorized to conduct operations under its permit which were unlawful under its certificate, and noted that it was not clear from the record "whether the appellee exercised these claimed privileges." The Court specifically held "that if it did enjoy them or any others that we have not enumerated, then it is entitled to have the same freedom in its common carrier certificate." *Montgomery II*, 376 U.S. at 394, 84 S.Ct. at 887. If plaintiff's claim that this opinion forbids any restrictions were correct, the prior privileges of Montgomery would have been irrelevant and the quoted language would be surplusage. We do not find this reading of the opinion persuasive. Indeed, the Court closed its opinion by pointing out that "[o]n remand the Commission will be free to contest appellee's factual claims as to what service it performed under its con-

tract carrier permit *and to limit the common carrier certificate to such activity." Id.* at 396, 84 S.Ct. at 888 (emphasis added). The clear import of this language, read with the portions of *Montgomery II* quoted in Section I of this opinion, is that the Commission may impose restrictions on a certificate provided that they are not new restrictions. This conclusion is supported by both *Montgomery III*, 257 F.Supp. 188, and *Fischbach*, 263 F.Supp. 239.

It is true that the Commission eventually gave Montgomery an unrestricted certificate, and Scott argues that this is the result compelled by the *Montgomery* decisions. However, even if the decisions of those cases are more ambiguous than we find them, logic alone would require that the Commission's authority to restrict certificates be upheld. The question as to what restrictions are to be placed in a certificate has been answered in part by § 212(c)—the converted carrier is not to lose any authority which it enjoyed as a contract carrier. However, when the limitation of the section is phrased in this way, it becomes obvious that the decision to grant an unrestricted certificate is tantamount to granting an entirely new authority. The Commission cannot grant a new certificate under § 207 unless it finds that public convenience and necessity would be served by doing so. Therefore it can be seen that the conversion proceedings required by § 212(c) are, in practice, two separate proceedings. The first is to determine whether the carrier is a common carrier whose activities are otherwise lawful; the second is to determine whether public convenience and necessity requires the granting of greater authority than previously enjoyed. Indeed, Scott implicitly recognized this dual function in 1957, when it applied for both a § 212(c) conversion certificate and an unrestricted certificate under § 207. The § 207 application was denied, upon a finding that public convenience and necessity did not require unrestricted service. Scott Truck Line, Inc., Common Carrier Application, 82 M.C.C. 427, 429–30 (1960). Since this

finding would militate against granting an unrestricted conversion certificate, it can be seen that the Commission must have the authority to restrict conversion certificates. Any other result would require the Commission to ignore the mandate of § 207 and authorize unneeded service. In some cases even the restricted authority might not be required by public convenience and necessity, and to this extent § 212(c) does require a violation of the principles underlying § 207. However, the purpose of this conflict is to avoid depriving carriers of operating authority they previously enjoyed, and is in no way a repudiation of the policies behind § 207. Consequently, it could be argued that the Commission must restrict conversion certificates to the terms of the prior permits. *Cf.* Zuzich Truck Line, *supra*, 224 F.Supp. at 471; Chemical Leamen Tank Lines, Inc. v. United States, 298 F.Supp. 1269, 1274 (D.Del.1969). Whatever the limits on the Commission's authority, both the clear meaning of the *Montgomery* cases and the logic of the statutes require a finding that the Commission has the authority to impose "keystone"-type restrictions on conversion certificates, and we so hold.

Scott argues that this conclusion is antithetical to the concept of a "common carrier," but that position is without merit. *Montgomery III*, 257 F.Supp. at 191 (Lewis, C. J., dissenting). Section 207 states that an application for a certificate "shall be denied" unless the Commission finds that the operations in question are required by public convenience and necessity. The obvious meaning of this statute is that common carriers are not to be unrestricted in their operations. Moreover, the courts have consistently upheld restrictions on common carriers based on the commodities they carry or the area they serve. *E. g.,* Byers Transp. Co. v. United States, 310 F.Supp. 1120 (W.D.Mo.1970); Beeline Express, Inc. v. United States, 308 F. Supp. 721 (D.Colo.), aff'd, 398 U.S. 955, 90 S.Ct. 2170, 26 L.Ed.2d 539 (1970); Pre-Fab Transit Co. v. United States, 306

F.Supp. 1247 (S.D.Ill.1969), aff'd, 397 U.S. 40, 90 S.Ct. 815, 25 L.Ed.2d 41 (1970). We find the keystone-type restrictions to be closely analogous to those commonly recognized, and thus there is nothing inherently contradictory about a common carrier operating under such restrictions.

Scott also argues vehemently that the Commission cannot impose such restrictions because the only basis for doing so is the "substantial parity" test repudiated in *Montgomery II*, 376 U.S. at 395, 84 S.Ct. 884. This was the original basis for restricting Scott's certificate, and it is true that the 1969 decision of the Commission did not clearly articulate a new test. However, a careful reading of the decision, 108 M.C.C. at 896, shows clearly that the restrictions were retained because there was no evidence of pre-1957 activities and because there was no showing that public convenience and necessity required granting Scott additional authority. *Id.* at 904–906. As discussed above, the Commission was not obligated to grant extended operating authority in the conversion proceedings, and the absence of a need for any extension is a completely legitimate basis for its decision. The Commission found that Scott had not made the showing necessary to receive an unrestricted certificate, and no basis for overturning that decision is provided by the fact that they applied the wrong test in 1960. Since the Commission clearly had the authority to impose some restrictions on Scott's certificate, it is necessary to determine whether the restrictions actually imposed constitute a legitimate exercise of that authority.

IV.

In making that determination the initial question to be resolved is whether the terms of the prior permit or the actual scope of pre-1957 activities are determinative of the limitations on the Commission's power to restrict conversion certificates. As mentioned above, the Supreme Court seemed to find that Montgomery's actual operations were the controlling factor, since they remanded

those proceedings to the Commission for a factual determination of Montgomery's previous activities. *Montgomery II,* 376 U.S. at 396, 84 S.Ct. 884. However, the concurring opinion of Mr. Justice Harlan sets out the controlling factor as the extent of operations authorized by the contract carrier permit. *Id.* at 397, 84 S.Ct. 884. Since the majority did not actually address this specific question, that case does not provide us with a controlling decision on this point.

■ There is logic in both approaches, since the purpose of the limitation in § 212(c) is to preserve for the converted carrier his prior authority. Using the actual scope of pre-1957 activities as the measure seems to reflect a more realistic appraisal of what the contract carrier actually enjoyed under his permit. Moreover, the value of an unexercised right seems somewhat negligible compared to the interests of the public in limiting operations to those required by public convenience and necessity. On the other hand, § 212(c) does state that the certificate shall authorize the same transport "as authorized in the permit," and thus the terms of the permit should be controlling. This is particularly true since the permit represents a vested right to conduct certain operations, and the fact that those operations were not conducted does not destroy the property value of the right to conduct them if so desired. On balance, then, the better view would seem to be that the Commission cannot restrict the certificate beyond the terms of the permit. This is in closer accord to the language of the statute, and prevents the Commission from depriving a carrier of a prior right. Of course, it may be necessary to hold an evidentiary hearing to determine what the Commission and the carrier had construed the permit as authorizing, and if it should appear that the Commission sanctioned operations under the permit which it now claims were not authorized, those operations should be permitted under the certificate. This gives the carrier the opportunity to demonstrate what his pre-1957 activities and rights were, yet it also gives the Commission the opportunity to limit the certificate to operations lawfully conducted under the permit.

■ In applying this analysis to Scott's situation, it is first necessary to compare the terms of the permit to those of the certificate. The permit authorized shipping only under contract "with persons . . . who operate wholesale or retail establishments, the business of which is the manufacture, processing, or sale of groceries or food." The certificate is "restricted to shipments moving from, to, or between warehouses, and wholesale, retail, or chain outlets of grocery and food business houses." 108 M.C.C. at 907–908. The effect and purpose of the latter restriction is clear. The Commission conceived of operations under the permit as being limited to shipments from, to or between grocery and food houses because the persons operating such establishments were the only persons with whom Scott could contract. Consequently, in the Commission's view the certificate carries over that restriction but does not limit Scott in any manner not established by the permit.

This situation is virtually identical to that presented by Montgomery. However, unlike Scott, the carrier there attempted to show that under its permit it had hauled shipments to and from locations other than those specified in the certificate. It was this claim which the Supreme Court required to be shown in an evidentiary hearing, *Montgomery II,* 376 U.S. at 394, 84 S.Ct. 884, and it was this same claim which required a second remand to the Commission from this court. *Montgomery III,* 257 F.Supp. at 191. If Scott's pre-1957 activities were limited to shipments "moving from, to, or between" the specified types of food and grocery houses, and if that was the construction given the permit by the Commission, then the restrictions in the certificate do not impose any new limitations and are valid.

■ In order to determine whether the permit and the prior activities were so limited, we ordinarily would review the evidence presented to the Commis-

sion. However, in this case Scott has made no objection to the findings of fact made by the Commission, and thus our review will be limited to determining whether those facts support the Commission's decision. The intervening defendants argue that there is no evidentiary question before us, claiming that Scott's failure to object to the restrictions when the certificate was first issued precludes it from raising any question now other than the legality of imposing any restrictions on a conversion certificate. However, before the decision in *Montgomery II* was handed down it was not entirely clear that evidence of pre-1957 activities was relevant, and we will not now hold Scott barred by its original failure to object to the restrictions on an evidentiary ground.

It is clear that if the facts as found by the Commission in 1969 are the only object of our scrutiny we must uphold the Commission's action. There was then no evidence presented of the nature or scope of Scott's pre-1957 activities, nor was there a showing that public convenience and necessity required the Commission to issue an unrestricted certificate. To avoid this conclusion Scott seeks to rely upon the 1958 proceedings, but they do not change the result. Scott argues that the 1958 proceedings were part of the Commission's record and should have been relied on in making the 1969 decision. This may well be true, but those proceedings provide no support for Scott's position.

■■ Scott first argues that because the hearing examiner recommended an unrestricted certificate be issued the Commission was bound by that recommendation. This argument is based on the fact that the Commission adopted the hearing officer's statement of the facts as its own. 82 M.C.C. at 429. However, this argument must fail for several reasons. First, the conclusion of the hearing examiner that an unrestricted certificate should be issued was not based on the facts of Scott's operations but on a legal analysis of the status of a common carrier. It is apparent that the Commis-

sion did not have to accept that analysis when it accepted the statement of facts. Secondly, the Commission is not simply empowered to make its own findings and conclusions, it is required to do so. *E. g.,* Morgan Drive-Away, Inc. v. United States, 268 F.Supp. 886 (N.D.Ind.1967). Consequently, it cannot be argued that making its own conclusion in this case was error. Finally, the question before us is not the propriety of the 1958 decision but the propriety of the 1969 decision, and even if there were procedural errors in arriving at the earlier decision, which we do not find, that would have no bearing on the validity of the later decision.

■ Scott's second argument seems to be that the facts as found in 1958 and in 1969 establish that Scott met its burden and was entitled to an unrestricted certificate. This is clearly wrong. Neither set of facts shows that there was any evidence presented going to the scope of pre-1957 activities. Moreover, Scott must have known that it was required to present such evidence in 1968. Whatever the ambiguities of *Montgomery II* might be, there could be no good faith doubt that it required an evidentiary hearing on the scope of pre-1957 activities. Rather than present such evidence, Scott chose to rely on the record from 1958. The hearing examiner's findings then did not support Scott's position, and its reliance was misplaced. It bears repeating that none of the facts found by the Commission, either in 1969 or eleven years earlier, support the conclusion that Scott is losing authority it previously had or that public convenience and necessity would be served by granting Scott an unrestricted certificate.

There can be no doubt that Scott was required to demonstrate the scope of its contract carrier operations if it hoped to receive an unrestricted certificate. Since *Montgomery II* put Scott on notice of the evidence it was to present, and since Scott had the opportunity to do so and chose not to take it, we will not remand this matter to the Commission for another hearing. It is therefore

**1178**

Ordered that the decision of the Interstate Commerce Commission issued May 26, 1969, entitled Scott Truck Line, Inc., Modification of Certificate, be and the same hereby is affirmed.