## UNITED STATES et al. v. J. B. MONTGOMERY, INC.

No. 66.   Argued January 8, 1964.—Decided March 23, 1964.

*Frank I. Goodman, pro hac vice,* by special leave of Court, argued the cause for the United States et al.   With him on the briefs were *Solicitor General Cox, Assistant Attorney General Orrick, Robert B. Hummel, Elliott H. Moyer, Robert W. Ginnane* and *Betty Jo Christian.*

*Charles W. Singer* argued the cause and filed a brief for appellee.

MR. JUSTICE CLARK delivered the opinion of the Court.

This appeal tests the validity of an order of the Interstate Commerce Commission issued under § 212 (c) of the Interstate Commerce Act as amended in 1957, 71 Stat. 411, 49 U. S. C. § 312 (c),[1] converting the appellee's con-

---

[1] "The Commission shall examine each outstanding permit and may within one hundred and eighty days after . . . [August 22, 1957] institute a proceeding either upon its own initiative, or upon application of

tract carrier permit into a common carrier certificate but limiting its coverage "to movements from, to, or between outlets or other facilities of particular businesses of the class of shippers with whom it may now contract." Appellee contends that this limitation violates the mandate of the Congress in § 212 (c) that any certificate so issued "shall authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit." The Commission answers that the restrictions are necessary to maintain "substantial parity" between the appellee's old and new operations. The District Court held the Commission "without statutory authority to impose the restrictions in question" and set aside the order and remanded the case for further proceedings. 206 F. Supp. 455, 461. Probable jurisdiction was noted. 372 U. S. 952. We affirm the judgment.

## I.

Prior to 1957 appellee operated under a contract carrier permit originally issued in 1943 under the "grandfather" clause contained in § 209 (a) of the Motor Carrier Act, 1935, 49 Stat. 543, 552.[2] It permitted carriage of: (1) such

---

a permit holder actually in operation or upon complaint of an interested party, and after notice and hearing revoke a permit and issue in lieu thereof a certificate of public convenience and necessity, if it finds, first, that any person holding a permit whose operations on . . . [August 22, 1957] do not conform with the definition of a contract carrier in section 203 (a) (15) as in force on and after . . . [August 22, 1957]; second, are those of a common carrier; and, third, are otherwise lawful. Such certificate so issued shall authorize the transportation, as a common carrier, of the same commodities between the same points or within the same territory as authorized in the permit." 71 Stat. 411.

[2] This provision is now substantially contained in 49 U. S. C. § 309 (a) (1):

"Except as otherwise provided in this section and in section 310a of this title, no person shall engage in the business of a contract carrier

commodities as are usually dealt in by wholesale or retail hardware and automobile-accessory business houses, and in connection therewith, equipment, materials and supplies used in the conduct of such business; (2) such commodities as are usually dealt in, or used, by meat, fruit, and vegetable packing houses; and (3) such commodities as are usually dealt in, or used, by wholesale and retail department stores. The permit contained a "Keystone restriction"[3] which limited appellee to transporting such commodities only under contracts with persons operating the businesses specified. It permitted the carriage of a wide variety of commodities within specified territories, without limitation of consignee, but only for those shippers under contract with appellee and engaged in the specified businesses.

In 1957, at the behest of the Commission, the Congress amended the statutory definition of a contract carrier, § 203 (a)(15) of the Interstate Commerce Act, so as to thereafter read:

"The term 'contract carrier by motor vehicle' means any person which engages in transportation

by motor vehicle in interstate or foreign commerce on any public highway or within any reservation under the exclusive jurisdiction of the United States unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business: *Provided,* That, subject to section 310 of this title, if any such carrier or a predecessor in interest was in bona fide operation as a contract carrier by motor vehicle on July 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time . . . the Commission shall issue such permit, without further proceedings, if application for such permit was made to the Commission as provided in paragraph (b) of this section and within one hundred and twenty days after October 1, 1935 . . . ."

[3] The phrase "Keystone restriction" comes from the title of the proceeding, *Keystone Transportation Co. Contract Carrier Application,* 19 M. C. C. 475. Such restrictions were approved by this Court in *Noble* v. *United States,* 319 U. S. 88 (1943).

by motor vehicle of passengers or property in inter-
state or foreign commerce, for compensation (other
than transportation referred to in paragraph (14)
and the exception therein), under continuing con-
tracts with one person or a limited number of per-
sons either (a) for the furnishing of transportation
services through the assignment of motor vehicles
for a continuing period of time to the exclusive use
of each person served or (b) for the furnishing of
transportation services designed to meet the distinct
need of each individual customer." [4]

In order to protect existing contract carrier permits, Con-
gress enacted § 212 (c) which, as we have indicated,
provided for the revocation of such a permit in appropri-
ate proceedings before the Commission and the issuance
of a common carrier certificate. In so doing, however, the
Congress provided that the resulting common carrier
certificate "shall authorize the transportation, as a com-
mon carrier, of the same commodities between the same
points or within the same territory as authorized in the
permit."

In 1958 these proceedings were begun under this sec-
tion and, after extended hearings, the Examiner found
that the permit should be revoked and the common car-
rier certificate issued covering the same commodities and
without restrictions. In addition he recommended the
inclusion of authority for carriage of "materials, equip-
ment, and supplies used by manufacturers of rubber and
rubber products, from Chicago, and points in Illinois

---

[4] 71 Stat. 411, 49 U. S. C. § 303 (a) (15). The former § 203 (a) (15)
stated the definition as follows: "The term 'contract carrier by motor
vehicle' means any person which, under individual contracts or agree-
ments, engages in the transportation (other than transportation re-
ferred to in paragraph (14) and the exception therein) by motor
vehicle of passengers or property in interstate or foreign commerce
for compensation." 54 Stat. 920.

within 100 miles of Chicago, to Denver . . . ." The Commission adopted the latter recommendation and it was not contested in the District Court. As to the remaining authorizations, the Commission appended to the recommendations of the Examiner a restriction against combining or "tacking" appellee's various operating rights in order to render a through service (likewise not contested), and also subjected each grant of authority to the following restriction:

"RESTRICTION: The. authority granted immediately above is restricted to shipments moving from, to, or between wholesale and retail outlets, . . ."

The validity of this restriction is the sole challenge raised in this proceeding.

## II.

The Commission contends that § 212 (c), read in the light of its background, is a "grandfather clause." Its purpose, therefore, is merely to continue, without expanding, the authority of those contract carriers whose operations are lawful under *United States v. Contract Steel Carriers, Inc.*, 350 U. S. 409 (1956), by revoking their contract carrier permits and issuing in lieu thereof common carrier certificates. The Commission concludes that, while the Congress specified only a continuance of the commodity and territorial limitations, Congress also intended that the effects of the "Keystone restriction" in the old permit be carried forward in the new one. Even if this is incorrect, the Commission says that it remains free to impose the restriction by reason of its general power under the Interstate Commerce Act to confine carrier operations within appropriate limits.

The difficulty with this argument is that the "Keystone restriction" under which appellee operated permitted it to carry commodities "dealt in, or used by" certain businesses without limitation, except that appellee was re-

quired to have a contract with the shipper so engaged. Although the Commission has eliminated this last requirement by certificating appellee as a common carrier, the restriction it has imposed here limits shipments "to shipments moving from, to, or between wholesale and retail outlets" and stores. Appellee insists that this restriction limits its carriage in that appellee cannot deliver from a supplier to a consumer, to or from a public warehouse or ship dock, between warehouses, to consolidation or transfer points or to a laborer or modification agent. The record does not show whether appellee exercised these claimed privileges under its contract carrier permit. We hold that if it did enjoy them or any others that we have not enumerated, then it is entitled to have the same freedom in its common carrier certificate.

The legislative history indicates that the Commission in its presentation to the Congress on § 212 (c) represented through its Chairman that the legislation would disturb no property rights of the contract carrier. Indeed, it asserted that such carriers would have "greater opportunity." [5] Moreover, the "Keystone restrictions"

---

[5] During the hearings before the Subcommittee of the Senate Interstate and Foreign Commerce Committee the following colloquy occurred between Mr. Barton, transportation counsel of the committee, and Mr. Clarke, then chairman of the Interstate Commerce Commission:

"Mr. BARTON: . . .

"Mr. Clarke, do you think there is any constitutional difficulty in changing, as we say, as you propose, a contract carrier to a common-carrier status?

"Mr. CLARKE: No; I can see none. *It isn't taking away from them anything that they have;* it isn't disturbing any property rights of the contract carrier. *It is giving him greater opportunity.* He can still serve his contract shippers, but through the conversion provisions of the bill *he would also have the opportunity to serve the general public as well as the obligation."* (Emphasis added.) Hearings before the United States Senate Subcommittee on Surface Transpor-

received the attention of the Congress. In the same Senate hearings, the difference between contract and common carriers was made clear, *i. e.*, while the former were limited in the "character" of their carriage to the type of commodities named in their permits, they were not limited to particular shippers. Common carriers, on the other hand, were not limited in any way in their certificated territories.[6] It appears to us that Congress intended to leave the converted contract carrier in as good a position as it previously enjoyed. Under the facts claimed, the Commission has not done so in this case.

We do not believe that appellee waived its rights by not proving that it had exercised the claimed privileges under its contract carrier permit. The permit has no restriction on its face in this regard, and such proof was understandably not presented in light of the recommendation of the Examiner that a common carrier permit include no restrictions whatever. At this late date it would be unfair to strip appellee of its claimed rights upon this basis.

Nor do we believe that the Commission can impose the restrictions on a rule of "substantial parity" under its general powers. Since § 212 (c) specifically commands that the Commission "shall" authorize the same carriage as was included in the contract carrier permit, we are unable to place § 212 (c) authority under the general power of other unrelated sections, such as § 208, where specific power is granted to assure "substantial parity." The appellee carried on certain operations under its contract carrier permit. Congress intended that these operations be continued under the common carrier permit.

---

tation of the Committee on Interstate and Foreign Commerce, 85th Cong., 1st Sess., Surface Transportation—Scope of Authority of I. C. C., p. 35.

6 *Id.*, at 182.

The judgment of the District Court is therefore affirmed. On remand the Commission will be free to contest appellee's factual claims as to what service it performed under its contract carrier permit and to limit the common carrier certificate to such activity.

*Affirmed.*

Mr. Justice Harlan, concurring.

I agree with what I understand to be the basic premise of the Court's holding—that the Commission may, under § 212 (c), carry over "Keystone" restrictions in converting a contract carrier's permit into a common carrier certificate, but may not impose any *new* limitations on the scope of the carrier's operations.

Appellee contends that the language of § 212 (c), comments by members of Congress, and the traditional notion that a common carrier serves the "public" suggest a congressional intent to preclude the continuance of Keystone restrictions in the certificates of converted carriers. Although this argument is not without force, it leads to the conclusion that the Commission is powerless to prevent even the widest expansion of the previous activities of a converted carrier, resulting from the replacement of its contract carrier permit by a common carrier certificate. Absent what I regard as compelling evidence that Congress intended so to cripple the supervisory power of the Commission, I am constrained to read § 212 (c) as consistent with other statutory provisions dealing with national transportation and to conclude that the Commission may limit the entry of the converted carriers into types of carriage previously proscribed to them.

Nonetheless, there appears to be no persuasive support in the language of § 212 (c), legislative history, or policy for permitting the Commission to inhibit activities open to the carrier before conversion. Congress

evinced an intent not to impose any new limitations on carriers subject to conversion, and, in view of the greater obligations owed by common carriers and the more extensive regulation to which they are subject, it is difficult to argue that the maintenance of existing carriage privileges will advantage the converted carriers to the possible prejudice of other common carriers. The Commission, therefore, may not include in the common carrier certificate a Keystone restriction that renders impermissible operations allowed under the contract carrier permit.

The determinative consideration in fixing the limit to the Commission's power is, according to these principles, the authorization conferred by the contract carrier permit; absent dormancy or abandonment, the extent of appellee's actual prior operations should be irrelevant. Since in the proceedings before the Commission appellee contended that § 212 (c) is inconsistent with any Keystone restriction and the Commission's position was that it is fettered in imposing such restrictions only by the concept of "substantial parity," the questions of dormancy or abandonment were not dealt with in the Commission proceedings, but the Commission should be free to consider any such issue on remand.

On these bases I concur in the judgment of the Court.