**ASSOCIATED WHOLESALE GROCERS, INC., Plaintiff,**

**National Association of Food Chains Intervening Plaintiff,**

**v.**

**UNITED STATES of America, and Interstate Commerce Commission, Defendants.**

**Civ. A. No. KC–2424.**

United States District Court
D. Kansas.
June 29, 1967.

Clarence D. Todd, Eugene M. Malkin, Laurence R. Brown, Washington, D. C., and Robert Bingham, Kansas City, Kan., for plaintiff.

William W. Scott, Washington, D. C., for plaintiff in intervention.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of

Justice, and Newell A. George, U. S. Atty., for defendant United States.

Robert W. Ginnane, Gen. Counsel, and Raymond M. Zimmet, Atty., Interstate Commerce Commission, for defendant Interstate Commerce Commission.

Before HILL, Circuit Judge, STANLEY, Chief Judge, and TEMPLAR, District Judge.

HILL, Circuit Judge.

This action was brought under 28 U.S.C. §§ 1336, 1398, 2284, 2321–2325, 49 U.S.C. § 17, and 5 U.S.C. § 1009, to enjoin, annul, and set aside a decision and order of the Interstate Commerce Commission. The Commission, pursuant to 49 U.S.C. § 304(c), instituted an investigation of certain practices of plaintiff Associated Wholesale Grocers, Inc., and hearings were held before an examiner who issued a report wherein he found that numerous respondent motor carriers had granted concessions and extended privileges and facilities in delivering merchandise at plaintiff's warehouse in Springfield, Missouri, by performing a sorting service, without providing for such service in their tariffs, in violation of sections 217(b) and 222(c) of the Interstate Commerce Act, 49 U.S.C. §§ 317(b) and 322(c), and that plaintiff Associated, had solicited, accepted and received such service by requiring the carriers to perform it, in violation of section 222(c) of the Interstate Commerce Act, 49 U.S.C. § 322(c).

On July 21, 1965, Division 2 of the Interstate Commerce Commission issued its decision and order in which it adopted as its own the examiner's statement of facts, conclusions and findings, and ordered Associated to cease and desist "all operations, in interstate or foreign commerce, of the character found in said recommended report to be unlawful." [1] After exhausting administrative remedies, Associated instituted this suit and National Association of Food Chains was permitted to intervene.

The facts are not in dispute. Associated operates a wholesale grocery warehouse in Springfield, Missouri, from which it supplies grocery commodities to retail grocery dealers in the area. Associated's suppliers tender goods to motor carriers who deliver them to the Springfield warehouse. When the goods are tendered to the carriers they are separated according to brand, size and flavor and they are so loaded on the trucks. In the usual case, when the motor carriers deliver the goods to Associated they are unloaded by the carriers so that the separation is maintained, the only difference being that the goods are unloaded opposite to the order in which they were loaded.

The examiner described the method of receiving the goods at Associated's warehouse as follows: "First, the driver arrives at the warehouse and presents his bill to the receiver. The receiver goes to his desk and finds his salmon colored copy of the purchase order which matches with the carrier's bill. The receiver then supplies the driver with pallets and a handlift jack. The receiver instructs the driver as to the number of cases of each commodity to be placed on a pallet, and the number of pallets to be used. The driver unloads as instructed and moves the loaded pallets with the handlift jack to a reserved area * * * behind the trailer or dock's edge. The receiver then checks off the shipment to determine if all items have been received."

The applicable tariffs provide for pickup and delivery of freight. Some of the tariffs do not mention "sorting" at all while others specifically exclude from pickup and delivery service the "sorting" of shipments but do not define "sorting." None of the applicable tariffs contain provisions that the rate includes sorting.

We must first of all determine if the method of receiving goods outlined above is provided for within the pick-

---

1. Associated Wholesale Grocers, Inc., et al.—Investigation of Practices, 325 I.C.C. 631, 632 (1965).

up and delivery rules contained in the tariffs. Plaintiffs argue that because the tariffs excluding "sorting" do not define the term and the remaining tariffs do not mention sorting at all, the method of unloading is permissible. In asserting this point, plaintiffs contend that the word "sorting" should be given the meaning it has in "transportation parlance" and not the "dictionary definition" which they contend the examiner relied upon.

■ At the hearing a tariff analyst offered his opinion as to whether or not the tariffs included the method of unloading employed. In commenting on his testimony the examiner said: "This witness, after examining all of the applicable tariffs and listening to a description of the delivery practices required by Associated, defined sorting to mean 'the separation of items according to brand, flavor, size, or any other means of identification' and testified that the delivery practices of the carrier respondents constituted sorting. His definition is borne out by Funk and Wagnalls Standard Dictionary which defines sorting ' * * * to separate from others that differ in any respect.' " This is the "dictionary definition" to which plaintiffs refer and it is obvious that the examiner considered more than it alone. In the examiner's opinion, it merely supported the analyst's definition. Rate and tariff items are promulgated for laymen to use in their ordinary affairs and where the language is plain they should be given their plain meaning.[2] We think the meaning of the word "sorting" is plain enough, that the carriers did "sort" the goods according to brand, size or flavor and that this sorting service was expressly prohibited in some of the tariffs and was not provided for in the others.

■ Plaintiffs next contend that an "informal," unreported I.C.C. case which is not in the file controls the question of whether or not a sorting service is included in the tariffs. The informal opinion relied upon[3] allegedly stands for the proposition that a carrier may sort goods despite a specific provision excluding sorting if the sorting is done for the carrier's own convenience and is not used as a subterfuge to defeat the tariff provision or prefer specific shippers over others. We do not think this opinion should change either the expert analyst's definition or the examiner's conclusion. The examiner found that Associated, not the driver, determines what kind and quantity of goods go on the pallets furnished by Associated; that "Associated is a palletized operation. Buyers buy in pallet quantities, and the mixing of commodities on the pallets will delay and hamper Associated's IBM operations. The quantities that go on a pallet are largely dictated by what can go on the slots in the warehouse."; and that in less-than-truckload movements where there had been stops made prior to unloading at Associated, and the commodities had become "mixed up," the goods were still required to be unloaded and placed on pallets according to brand, size or flavor. In addition, the examiner noted that one of the drivers who testified at the hearing said that Associated's manager had told him that if a carrier did not separate commodities according to brand, size and flavor, the shipment would be refused. The examiner also pointed out that some driver's deliveries were refused because they were not sorted.

■ We think the examiner has set forth adequate supporting conclusions for his determination that the method of receiving goods required by Associated amounted to "sorting," that this method of receipt was a service not provided for in the applicable tariffs, and that those conclusions are supported by substantial evidence in the record.

2. Bernstein Bros. Pipe & Mach. Co. v. Denver & R. G. W. R. Co., 10 Cir., 193 F.2d 441; West Coast Products Corp. v. Southern Pacific Co., 9 Cir., 226 F.2d 830.

3. The opinion is referred to in Sorting or Segregating Freight at Middle Atlantic and Southern Points, I & S Docket No. M-17287, decided August 21, 1964 (not printed).

The service to be performed by carriers must be provided for in the applicable tariffs.[4] Since the sorting service performed by the carriers and required by Associated was not provided in the tariffs, the Commission held that Associated "has been and is soliciting, accepting, and receiving concessions, privileges and facilities"[5] in violation of section 222(c) of the Interstate Commerce Act, 49 U.S.C. § 322(c).[6]

Plaintiffs contend that the Commission's decision does not support the finding of a violation of section 222(c) because it is not adequately shown that Associated "knowingly" solicited, accepted, or received a "concession" within the meaning of the statute. In asserting this position, plaintiffs contend that: (1) Not until the decision under review has "sorting" been defined so that not until after the decision could Associated "know" what was prohibited and (2) the government did not prove that Associated was receiving services other receivers in like circumstances were not receiving, hence there is no "concession."

As to the first contention, we have already pointed out that the examiner's decision rests on more than a dictionary definition of "sorting." While the examiner did find that the method of receiving goods was expressly prohibited in the tariffs excluding "sorting" he also found that the service—the substantive act performed by the carriers—

was not provided for in any of the tariffs, neither those excluding sorting nor those not mentioning the word at all, and that the act referred to as "sorting" amounted to a concession. Whatever meaning Associated attached to the word "sorting" we think it knew that the act it was requiring of the carriers was not provided for in the tariffs and that it did knowingly "solicit, accept, or receive" that act. In fact, as the examiner pointed out, in 1962, in a letter written by a District Supervisor, Associated was warned by the Commission's Bureau of Motor Carriers that sorting and segregating of less-than-truckload shipments was in violation of either the carrier's applicable tariffs or the Commission's rules or regulations, or both. Plaintiffs assert that the letter is neither a binding nor official declaration of the Commission. That makes no difference. Associated's receipt of the letter may still, along with all the other evidence, be considered in determining whether it knew that the sorting of goods it was requiring of carriers was not provided for in the tariffs and was a concession.

Considering all the evidence, we think there is ample support for the Commission's finding that: " * * * The evidence shows that Associated has required the sorting of merchandise by brand, size, or flavor for the past 6½ years with the only change being in the operation of the handlift occurring about

---

4. New York, New Haven & Hartford R.R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 50 L.Ed. 515; Interstate Commerce Commission v. North Pier Terminal Co., 7th Cir., 164 F.2d 640, cert. denied, 334 U.S. 815, 68 S.Ct. 1071, 92 L.Ed. 1746.

5. Associated Wholesale Grocers, Inc., et al.—Investigation of Practices, 325 I.C.C. 631, 649.

6. "(c) Any person, whether carrier, shipper, consignee, or broker, or any officer, employee, agent, or representative thereof, who shall knowingly offer, grant, or give, or solicit, accept, or receive any rebate, concession, or discrimination in violation of any provision of this chapter, or who by means of any false statement or representation, or by the use

of any false or fictitious bill, bill of lading, receipt, voucher, roll, account, claim, certificate, affidavit, deposition, lease, or bill of sale, or by any other means or device, shall knowingly and willfully assist, suffer or permit any person or persons, natural or artificial, to obtain transportation of passengers or property subject to this chapter for less than the applicable rate, fare, or charge, or who shall knowingly and willfully by any such means or otherwise fraudulently seek to evade or defeat regulation as in this chapter provided for motor carrier or brokers, shall be deemed guilty of a misdemeanor and upon conviction thereof be fined not less than $200 nor more than $500 for the first offense and not less than $250 nor more than $2,000 for any subsequent offense."

2 years ago. During this entire time Associated has knowingly demanded and received concessions and privileges from the carrier respondents * * *." [7] In arguing that there has been no concession, plaintiffs, relying on Continental Shippers' Association v. United States, 9 Cir., 328 F.2d 966,[8] place heavy emphasis on their contention that the government has not shown that other receivers in like circumstances were not being given the same sorting service by carriers. In this regard, the examiner specifically found that "A majority of the drivers who testified concerning deliveries to other grocery warehouses in Springfield said that they were not required to sort the merchandise. Associated's branch manager in Springfield testified that six months ago competitive warehouses were not using pallets and received their shipments in a different manner than his company. He named two competitors, Ozark Wholesale Grocery Company and Producers Grocery Company, which are changing to pallets and receiving merchandise in a manner similar to Associated." This testimony along with other evidence relied upon by the examiner provides adequate support for his finding that Associated "knowingly demanded and received concessions * * *."

■■■ A final contention is that the order under review contravenes the National Transportation Policy,[9] which declares that the Interstate Commerce Act is to be administered and enforced so as " * * * to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preference or advantages, or unfair or destructive competitive practices; * * *." Suffice it to say that we think the National Transportation Policy is not being contravened. The solicitation and receipt of an "undue preference or advantage" has been established.

■■■ The orders of an administrative agency should not be set aside, modified or disturbed if they are within the scope of the agency's statutory authority and are based upon adequate findings which are in turn supported by substantial evidence.[10] The Commission was acting within its statutory authority, the examiner's report does contain findings adequate to support the order, and there is substantial evidence supporting those findings.

Counsel for defendants will prepare and submit to the Court an appropriate Journal Entry of Judgment in conformity herewith.

7. Associated Wholesale Grocers, Inc., et al.—Investigation of Practices, 325 I.C.C. 631, 648.

8. It should be noted that this case involved a criminal prosecution under the Elkins Act, and while we think the criteria set forth in the case for establishing a "concession" under that act have been met in the case at bar, we are not holding that criminal statutes in the Elkins Act and the Interstate Commerce Act are subject to the same rules of interpretation.

9. 54 Stat. 899 (1940).

10. Gilbertville Trucking Co. v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L. Ed.2d 177; United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; King Van Lines, Inc. v. United States, D.Kan., 220 F.Supp. 551; J. B. Montgomery, Inc. v. United States, D. Colo. 206 F.Supp. 455, affirmed, 376 U.S. 389, 84 S.Ct. 884, 11 L.Ed.2d 797, rehearing denied, 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217.