**CURTIS, INC., a corporation, Plaintiff,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. C-3282.**

United States District Court,
D. Colorado.

Aug. 24, 1972.

Richard A. Peterson, Lincoln, Neb. (Duane W. Acklie and Frederick J. Coffman, of Acklie & Peterson, and Donald E. Leonard, of Nelson, Harding, Marchetti, Leonard & Tate, Lincoln, Neb., with him on the brief), for plaintiff.

Geraldine R. Keyes, I. C. C., Washington, D. C. (Fritz R. Kahn, Gen. Counsel, I. C. C., Washington, D. C., Richard W. McLaren, Asst. Atty. Gen., and John H. D. Wigger, Dept. of Justice, Washington, D. C., and James L. Treece, U. S. Atty., Denver, Colo., with her on the brief) for defendants.

Before DOYLE, Circuit Judge, and CHILSON and WINNER, District Judges.

## MEMORANDUM OPINION

WINNER, District Judge.

Plaintiff seeks to enjoin enforcement of an order of the Interstate Commerce Commission. Jurisdiction rests on 28 U.S.C. § 1336, and the case has been heard by a three-judge court pursuant to 28 U.S.C. § 2325. We are called upon to decide whether Curtis can collaterally attack a so-called "Keystone restriction."

Before 1957, plaintiff's predecessor, Nate's Truck Line, operated under a contract carrier permit authorizing transportation under contracts with persons "who operate meat packinghouses, for the transportation of . . . fresh meats, and packinghouse products, equipment and supplies." The Interstate Commerce Act was amended in 1957, and under amended Section 212(c), Nate's was issued a common carrier certificate limited to the same commodities "when moving to or from the warehouses, plants or other facilities of meat plants or other facilities of meat packinghouses." This limitation was imposed under the Commission's then prevailing theory of substantial parity, and at the time of the conversion, evidence of Nate's actual operations was not considered, nor did Nate's object to the restriction. Thereafter, Nate's name was changed to Nebraska-Illinois-Colorado Express, and still later, Curtis acquired that carrier, albeit there had been theretofore substantial identity of individual ownership interests.

This Court then decided J. B. Montgomery, Inc. v. United States (1962) 206 F.Supp. 455, and held that the substantial parity test of the Commission was invalid. After the *Montgomery* decision, Curtis asked reconsideration of the new conversion of its permit to a certificate, but it did not press the matter and the request has not been heard. *Montgomery* was affirmed in United States v. J. B. Montgomery, Inc. (1964) 376 U.S. 389, 84 S.Ct. 884, 11 L.Ed.2d 797, and it was there held that substantial parity is not the test; but, rather, that the test is whether the certificate restrictions left "the converted contract carrier in as good a position as it previously enjoyed." This, the Supreme Court held, was a question of fact to be determined by inquiry into the actual operations of the carrier before the conversion from permit to certificate. Still Curtis did not seek a hearing on its request for reconsideration of the order of conversion.

In June, 1968, on its own motion, the Commission commenced an investigation of Curtis' activities and it directed that the Bureau of Enforcement participate. While this investigation was going on, Curtis asked to modify its certificate and it further asked to reopen the conversion proceeding. The Commission denied both requests. The investigation came on for hearing, and Curtis there offered testimony as to its pre-conversion activities. The government objected to this evidence, and, although it was received at the time of the hearing, in his Report and Order the examiner said:

"Accordingly, no consideration will be given herein to the evidentiary matters and respondent's argument based thereon dealing with the evolution of the said certificate and the propriety or impropriety of the language embodied therein."

The Commission ordered Curtis to cease and desist from transporting property in interstate commerce "from Waldorf Paper Products Company (now Hoerner-Waldorf Corp.) of Chicago, Illinois, to the facilities of Keebler Company at Denver, Colorado, unless and until appropriate authority for such operations is obtained," and it ordered that the conversion proceeding be "reopened

for further hearing at a time and place to be hereafter fixed." This lawsuit followed, and its remaining nub is whether the determination of the scope of the pre-conversion activities of Curtis' predecessor should have been made in the investigation hearing or should be made in the reopened conversion proceeding.

When the case was filed, Curtis challenged the right of the Commission to impose a Keystone restriction, but at time of argument both sides accepted Scott Truck Line, Inc. v. United States (1971) (D.C.Colo.) 339 F.Supp. 1169, as a correct statement of the law. That case, interpreting United States v. J. B. Montgomery, Inc. (1964) 376 U.S. 389, 84 S.Ct. 884, 11 L.Ed.2d 797, held that "the Commission may impose restrictions on a certificate provided that they are not new restrictions. . . . Whatever the limits on the Commission's authority, both the clear meaning of the *Montgomery* cases and the logic of the statutes require a finding that the Commission has the authority to impose 'keystone'-type restrictions on conversion certificates, and we so hold." *Scott* held that the certificate may not be restricted beyond the terms of the permit and that it can be limited to operations lawfully conducted under the permit. It was further held that the carrier must demonstrate the scope of its contract carrier operations.

Thus, as has been noted, all that now remains in this case is for us to decide whether the Commission should have reconsidered or should now reconsider the conversion restrictions solely on the basis of evidence offered at the investigation hearing or whether it should pass on their validity in a new and separate hearing as it has now ordered. Curtis admits that its attack on the conversion restrictions during the investigation hearing was collateral, and we hold that this collateral attack cannot be made. Andrew G. Nelson, Inc. v. United States (1958) 355 U.S. 554, 78 S.Ct. 496, 2 L. Ed.2d 484.

It is to be remembered that the investigation was ordered by the Commission and that the Bureau of Enforcement was directed to participate as a party. In such hearings, competitors do not usually appear, and to say that the evidence offered by Curtis at the investigation hearing is all the Commission should consider in passing on the separate matter of a reopening of the conversion would be to order a resolution of the problem on an inadequate record. Curtis complains that it will have to repeat its evidence at the forthcoming hearing, but a review of the record discloses that Curtis' proffered testimony was not so voluminous that any unreasonable burden is imposed on it, and, after all, the evidence wasn't proper at the investigation hearing.

The position of Curtis here is not essentially different from the position of Scott in Scott Truck Line v. United States, supra. Both Curtis and Scott read *Montgomery* to prohibit Keystone restrictions no matter what the facts, and neither Curtis nor Scott pushed for a reconsideration of their conversion restrictions. As the court said in *Scott*:

"However unfortunate Scott's decision to proceed as an unrestricted common carrier rather than to petition the Commission, that decision has not resulted in prejudice meriting dismissal of this action. Six years of shipping revenues have in theory been lost to the intervenors, and if Scott loses this appeal the revenues will still be lost. If Scott wins there can be no objection to continued service to this clientele, and the revenues will not be returned."

Here, Curtis did not push for modification of the restrictions on its certificate until after the investigation started. It could have done so, but it chose to rely on its reading of *Montgomery*. We were assured by Commission counsel at time of argument that if Curtis desires an early hearing on the reopened conversion, it can have one, and we are sure that Curtis will encounter no undue delay.

In summary, we hold, (1) Keystone-type restrictions may be imposed on conversion certificates provided that a carrier cannot be restricted from conducting operations lawfully conducted under the permit; (2) the claimed invalidity of conversion restrictions cannot be raised by collateral attack; (3) the question of invalidity of the restrictions imposed on Curtis must be determined in the now reopened conversion rehearing and (4) the cease and desist order entered by the Commission which is the subject of this lawsuit is valid as a proper interpretation by the Commission if its own certificate, and the Commission's findings in this regard are fully supported by the record.

It is ordered that judgment be entered in favor of defendants and against plaintiff.