Public Utilities Commission
No. 6532

JONATHAN MILNE d.b.a. MILNE ENTERPRISES, & a.

v.

STATE OF NEW HAMPSHIRE

September 28, 1973

*Burns, Bryant, Hinchey, Cox & Shea (Mr. Donald R. Bryant* orally) for plaintiffs Jonathan Milne and H. & H. Transportation, Inc.

*Warren B. Rudman,* attorney general, and *Roger G. Burlingame,* attorney (*Mr. Burlingame* orally), for the State.

*McLane, Carleton, Graf, Greene & Brown* and *Charles A. DeGrandpre (Mr. DeGrandpre* orally) for Appleyard's Motor Trans., Inc. *& a.,* protestants.

*Francis E. Barrett, Jr.* (of Massachusetts) for Merrill Transport Co., protestant.

LAMPRON, J. Appeal under RSA 541:6 from an adverse decision of the public utilities commission on plaintiffs' petition under RSA 375-B:10 (Supp. 1972) seeking commission approval to transfer to Milne a motor carrier permit now held by H. & H. Transportation, Inc.

The permit in question was originally issued under the so-called grandfather clause (RSA 375-B:4 (Supp. 1972)) to Ernest Gilman on October 7, 1968. *See Ernest E. Gilman Trans-*

*portation Co.,* 53 N.H.P.U.C. 53 (1968). The certificate specifically authorized Gilman to engage in the "[t]ransportation of fuel oil and kerosene between all points and places in New Hampshire." By an order dated April 7, 1971, the commission approved the transfer of this permit from Gilman to H. & H. Transportation, Inc. *See Ernest E. Gilman, d/b/a Gilman Transportation Co. and H. & H. Transportation, Inc.,* Order No. 10,233 N.H.P.U.C. The latter now seeks permission to transfer to Milne its rights to haul "fuel oil and kerosene" under this certificate.

The main issue before us is whether the commission properly decided that the certificate issued to Gilman and later transferred to H. & H. Transportation conferred authority to transport kerosene and light fuel oils only and did not authorize the hauling of residual or heavy fuel oils which was Milne's sole interest in obtaining transfer of the permit.

Plaintiff Milne bases a right to transport the latter type oils on the language of the permit ("fuel oil and kerosene") issued to Gilman under a grandfather clause. RSA 375-B:4 (Supp. 1972). This clause, patterned after the Interstate Commerce Commission grandfather clause (49 U.S.C.A. § 306 (a) (1)), permits a motor carrier who "was engaged in bona fide operation . . . on December 1, 1966" to continue such operation "without requiring further proof that the public convenience and necessity . . . will be served by such operation" or that the applicant is qualified to perform this service. *See* RSA 375-B:5, 7 (Supp. 1972); 13 Am. Jur. 2d *Carriers* § 85 (1964); 1 E. Watkins, Shippers and Carriers §§ 5-7 (5th ed. 1962). While being liberal toward prior holders of permits, such statutes are intended to maintain a substantial parity between future operations and the carrier's prior bona fide operations. *Nashua Motor Express, Inc. v. United States,* 230 F. Supp. 646 (D.N.H. 1964); *see United States v. J.B. Montgomery, Inc.,* 376 U.S. 389, 11 L. Ed. 2d 797, 84 S. Ct. 884 (1964).

To meet the statutory requirements of "bona fide operation" (RSA 375-B:4 (Supp. 1972)) the carrier's prior operations must have been actual and substantial rather than potential. *United States v. Carolina Freight Carriers Corp.,* 315 U.S. 475, 86 L. Ed. 971, 62 S. Ct. 722 (1942); *Germenko v. Public Serv. Comm'n,* 226 Md. 295, 173 A.2d 362 (1961); *see* Annot.,

4 A.L.R.2d 667, 699 (1949). The certificate which is issued under this section of the statute must limit authorized haulage to those articles and locations which were serviced by the carrier prior to the grandfather cut-off date and thereafter. RSA 375-B:4 (Supp. 1972). Otherwise a new service would be authorized "without requiring proof that the public convenience and necessity or the pubic interest will be served by such operation" (*id.*) and that the carrier is qualified. RSA 375-B:7 (Supp. 1972); *United States v. Carolina Freight Carriers Corp. supra; Consolidated Copperstate Lines v. United States,* 293 F. Supp. 858 (C.D. Cal. 1968); *see Vautier v. State,* 112 N.H. 193, 291 A.2d 612 (1972).

The commission properly found on the evidence that both prior and subsequent to the "grandfather" date Gilman, the original holder of the certificate, had hauled only light fuels and that his transferee, H. & H. Transportation, had never transported any but light fuel oils. The commission also properly found that different equipment is needed to transport the heavy residual oils than that required to haul light fuel oil; that an interchange of this equipment may be possible, but is not common practice in the transportation of fuel oils; and that the equipment owned by Gilman and H. & H. Transportation was not the type used for residual oils. There was evidence that H. & H. Transportation had no equipment at this time and that Milne was merely buying its rights under the certificate acquired from Gilman. Milne testified that if the certificate did not authorize the hauling of heavy oils he was not interested in the transfer sought.

When considering plaintiffs' petition for a transfer of the certificate, it was proper for the commission to inquire into and decide the extent of the authority granted when it was originally issued to Gilman. *Lund v. United States,* 319 F. Supp. 552, 556 (D. Col. 1970); *Jenkins Truck Line Inc. v. United States,* 318 F. Supp. 207 (S.D. Iowa 1970); *Cole's Express v. O'Donnell's Express,* 156 Me. 211, 163 A.2d 360 (1960); *see* RSA 375-B:6, 7 (Supp. 1972). A delineation by the commission of the rights granted under the certificate does not constitute a suspension, change or revocation of the permit under RSA 375-B:9 (Supp. 1972) as contended by the plaintiffs. It withdraws nothing from the holders of the certificate which they

legitimately and lawfully had theretofore and consequently is not an invasion of vested rights. *Lund v. United States supra; Jenkins Truck Line, Inc. v. United States supra.*

Plaintiffs do not claim lack of notice of the hearing held on June 30, 1972. They argue, however, that it was insufficient to apprise them that the commission was to consider the nature and extent of the certificate. By letter dated May 2, 1972, the commission had advised Milne that a staff investigation revealed that neither Gilman nor H. & H. Transportation had ever transported residual fuel oils either before or after the "grandfather" date of December 1, 1966, or since, or had any equipment for that purpose. "Under these circumstances we wish to point out that any transfer of this permit will require, in the interest of fairness, a further and more accurate description of its terms and conditions." We hold that plaintiffs had actual knowledge that the issue was to be considered and were not prejudiced in any manner. *McLay v. Maryland Assemblies, Inc.,* 306 A.2d 524 (Md. 1973). We further hold that plaintiffs have failed to show that the dismissal of their petition by the commission was clearly unreasonable or against the law. *Household Carriers v. Ouellette,* 107 N.H. 199, 219 A.2d 699 (1966); *Vautier v. State,* 112 N.H. 193, 291 A.2d 612 (1972).

*Appeal dismissed.*

All concurred.